(No. 33187.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN REZEK, Plaintiff in Error.

*Opinion filed Sept. 23, 1954—Rehearing denied November 15, 1954.*

GEORGE M. CRANE, and EUGENE L. McGARRY, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff in error, hereinafter referred to as the defendant, was indicted in September, 1947, in Cook County, together with Ernest Kulakowski, Luke Crnjak and Andrew Duncan, for the crime of robbery while armed with a dangerous weapon, to-wit: a pistol, and taking from James J. Morris the sum of $200. On motion of defendants for severance, Rezek was granted a separate trial and was found guilty on February 2, 1948, and sentenced for a term of years not less than ten nor more than twenty, and his case is here for review on a writ of error.

On April 18, 1947, the tavern of James J. Morris at 9100 South Ashland Avenue, Chicago, was held up at nine o'clock in the evening by four men and $200 was taken from the cash register. There were 40 or 50 customers in the place and the tavern was lighted by five indirect lights.

John Delaney, a police officer, testified that on September 11, 1947, almost five months later, he and another officer were cruising west on Eighty-second Street when they heard a sharp report like the backfire of an auto. They found a car parked in front of 8149 Muskegon Avenue with a cloud of smoke or carbon backfire coming from the pipe. Behind the wheel of the auto, there was sitting a man who told witness that it was not his car and that it belonged to a man by the name of Walter. Officer Delaney looked into the car and there was a man lying in the back seat asleep, with his face on his arm and his head down, and he could only see one side of the man's face. He afterwards learned that the man in the front seat was Luke Crnjak, and the officer went with Crnjak to a

nearby tavern to find the owner of the car. They did not locate the owner of the car and the officer returned to the car. The man that had been in the back seat was gone, and they called for a wagon at the call box and put Crnjak into the wagon. In getting into the car they moved a brown hat lying on the front seat and underneath the hat were two pistols, both loaded, one identified as People's exhibit 1 and a nickel-plated revolver identified as People's exhibit 3. They then went to the police station.

Delaney testified that he had known defendant John Rezek and that he recognized him as the man that was asleep in the back of the car. Between 6:00 and 6:30 that morning he went to Rezek's home and placed him under arrest, and searched the garage in the rear of his home and found a holster for a P. 38 automatic, identified as People's exhibit 4.

Basil Murray, bartender, testified that John Rezek was one of the customers at the time of the robbery and that he waited on him, and that People's exhibit 2 resembled the weapon that he saw in the hands of Rezek, whom he identified.

John Riordan, an auditor, testified that he was in the tavern talking to a friend and heard a noise and turned around and one of the fellows there said, "Get down on the floor," and this fellow put a gun to him and said, "You get down too." It was a German Lueger and that People's exhibit 1 resembled the gun that he saw in the man's hand. He did not identify Rezek.

Edward Blake, a salesman, testified that he was in the tavern with his wife and two other couples and heard someone say, "This is a stickup," and he turned around and this one fellow was standing with a nickel-plated revolver in his hand pointing it at them. That People's exhibit 3 looked like the gun that he saw.

Florence McGlynn testified that she was at the bar and someone yelled, "This is a holdup," from the back of the

tavern, and a boy walked up to the front, holding a gun, and he turned to her, and People's exhibit 2 looked like the gun. She said she saw the boy in the courtroom and pointed out the defendant John Rezek. She said when she first saw him he was over fifteen feet away and there were people between the man and herself. Then he walked to a point about six feet away from her and she could see the gun. It was about thirty seconds from the first time she saw the man until he put the mask on his face. He had a dark handkerchief hanging around his neck and he just pulled it up over his nose.

The defendant denied that he participated in the robbery and denied that he was in the auto with Crnjak on September 11, 1947.

Defendant's counsel in this court did not appear for him in the trial. Error is assigned for reversal that the State's Attorney was guilty of gross misconduct which deprived the defendant of his right to a fair trial.

On this point it is sufficient to say that both counsel for defendant and the assistant State's Attorney engaged in charges and countercharges against each other that should have no place in an orderly trial. Counsel for defendant asked many questions that were objectionable, that necessitated the trial court sustaining objections, and repeated questions after objections had been sustained by the court. The record presents the exact antithesis of an orderly trial. The bickering between counsel for defendant and the State's Attorney was continuous. Frequently the court was called upon to sharply rebuke both counsel, who were equally to blame. Defense counsel was held in contempt of court and fined. A reading of the transcript develops the impression that the issue to be determined by the jury was not the guilt or innocence of the defendant but was a contest between snarly and belligerent counsel. Notwithstanding this condition of the record which was in part caused by the conduct of defendant's own counsel,

we cannot overlook it in determining whether the defendant has had a fair trial under the entire record.

Further error is assigned in the admission of incompetent and prejudicial evidence. Over the objection of counsel for defendant, the witness Morris, the owner of the tavern, after stating that he could not identify the defendant, was permitted to state that on September 11, 1947, he was called to the police station in South Chicago and attended a showup, and that he saw the codefendant Luke Crnjak and picked him out at that time. Thereupon the assistant State's Attorney directed the bailiff to bring out Crnjak and, over the objection of the defendant, Crnjak was brought in and paraded before the jury and the witness was permitted to state that he was the man that was picked out at the Chicago police station.

The same thing occurred when the witness Riordan, the auditor, was on the stand, and notwithstanding his failure to identify the defendant, again the bailiff was requested to bring in the codefendant Kulakowski and parade him before the jury and the witness did identify Kulakowski as one of the robbers. Again when the witness Blake, the salesman, was on the stand and after he failed to identify the defendant Rezek, the codefendant Duncan was brought in by the bailiff and paraded before the jury and identified by the witness.

The same thing occurred when the witness Murray, the bartender, was on the stand, and after he had identified the defendant, Rezek, the bailiff was directed to bring in the codefendants Duncan and Crnjak and parade them before the jury and the witness also identified them as participants in the robbery. All of this was over the objection of the defendant.

We can think of no relevancy of this testimony on the question of the guilt of this defendant. The identifying of the three codefendants as participants in the robbery certainly had no weight in determining whether the defendant

had likewise participated therein. It was well calculated to prejudice the defendant in the eyes of the jury.

Counsel for the People have presented no argument in support of this action of the trial court in permitting the parading of these several codefendants before the jury when the different witnesses were upon the stand. They merely state that in the case of *McKevitt* v. *People*, 208 Ill. 460, 464, the complaining witness, Patrick Cahill, was permitted to identify a codefendant McKnight, who was brought into the courtroom, the same as in this case. That case is no authority in supporting the parading of the codefendants in the instant case, because one McKnight was brought into court at the instance of the defendant McKevitt. Defendant McKevitt on his part had testified that he had never been in the saloon in question and that he did not take part in the assault on Patrick Cahill nor in the robbery. When Cahill was being cross-examined counsel for McKevitt called one McKnight into court and Cahill then said that this man McKnight looked like the man with whom he had fought at the time of the robbery. Later McKnight, on the part of McKevitt, testified that he was the person whom Patrick Cahill had so identified and that he did not see McKevitt at any time during the month of February. It is obvious that the *McKevitt case* is not authority for the position of the People in this case.

In *People* v. *Bennett*, 413 Ill. 601, Bennett and Kirkpatrick were jointly indicted for burglary and larceny and a severance was granted. On the trial the codefendant Kirkpatrick, at the request of the State's Attorney, was called as a witness by the court and he was submitted to a lengthy examination by the State's Attorney which resulted in no material testimony because the witness claimed his constitutional privilege. We held that that was error notwithstanding that no material evidence was produced from the witness, for it was clearly calculated to prejudice the defendant in the eyes of the jury. Likewise in the

instant case, notwithstanding that the codefendants did not testify, the calling of these codefendants was certainly prejudicial to the defendant.

We recognize the rule that the weight to be given positive testimony identifying the accused is a question for the jury, (*People* v. *Wilson,* 1 Ill. 2d 178,) and if either of the above errors existed separately we would not be inclined to reverse the judgment, but, when considered collectively, we believe they produce such prejudice and error as to make it incumbent upon this court to accord the defendant another trial. Accordingly the judgment and sentence of the criminal court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*