**People of the State of Illinois, Plaintiff-Appellee, v. James Edward Garnett, Defendant-Appellant.**

**Gen. No. 52,503.**

First District, Third Division.

July 18, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Morton Zwick, Theodore A. Gottfried, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The defendant, James Edward Garnett, was indicted with Wesley French and John French for the offenses of murder and armed robbery. The defendant was tried separately before a jury and was found guilty of attempted armed robbery and was sentenced to the Illinois State Penitentiary for a term of ten to twelve years.

The defendant contends that: (1) he was not proven guilty beyond a reasonable doubt; (2) the verdicts of not guilty of murder and guilty of attempted armed robbery were inconsistent and the guilty verdict should therefore not be allowed to stand; (3) the State's closing argument improperly shifted the burden of proof to the defendant; (4) it was prejudicial for the prosecution

to place before the jury its personal belief of the defendant's guilt; (5) the State's use of accomplice testimony deprived the defendant of due process of law and of equal protection of the laws; and (6) the sentence was excessive and should be reduced.

At trial the State produced two witnesses, Wesley French and Larry Hicks, who testified that they were with the defendant on the night in question and that the defendant stabbed the deceased, Frank White.

On direct examination, Wesley French testified to the following. At about 10:00 p. m. on the evening of September 5, 1966, the witness, Larry Hicks, John French, and the defendant went to a drugstore and to a liquor store in which they purchased wine, beer, and several other items. The four men walked along South Park Avenue but stopped as they reached 41st Street, whereupon "me (the witness) and James (the defendant) uh, decided, uh, to rob a man." The witness and the defendant crossed the street to where they saw the victim, Frank White, walking toward his apartment. Larry Hicks and John French remained on the opposite side of the Street. The defendant asked the victim for a cigarette. White began to walk to the doorway of his apartment building when the defendant and Wesley French ran behind him. As White reached the door to the vestibule, the defendant stabbed him in the back with a green-handled fishing knife. White turned and fell to the vestibule floor and the defendant stabbed him three more times in the chest and the witness went through the victim's pockets. The two men then fled the scene and returned to Linda Johnson's house. John French and Larry Hicks were at the house when they arrived.

Larry Hicks substantially corroborated the testimony of Wesley French. While standing across the street, Hicks stated that he saw the defendant stab the deceased. He added that he had never talked to Wesley French after the events of that evening.

162

On cross-examination, Wesley French admitted that he expected leniency in return for his truthful testimony. He also admitted to having made inconsistent statements prior to trial. He admitted that he had denied any participation in the crimes at the coroner's inquest. He also revealed that he had made a statement to the police on September 12, 1966, in which he denied that his brother, John French, was with them on the night in question. On redirect examination, the State, with the consent of the defendant, read to the jury a written promise made by the State to Wesley French wherein it stated that in return for his truthful testimony, the murder charge would be dismissed if he pleaded guilty to the armed robbery charge and that the State would recommend a sentence of not less than twelve nor more than fourteen months' imprisonment.

The cross-examination of Larry Hicks revealed that he too had made earlier statements which were inconsistent with his testimony at trial. He stated that he had lied on those earlier occasions "to keep it all from falling down on me."

The defendant testified on his own behalf that he had spent the night with his girl friend, Evelyn Tankson. He stated at some time during the evening he fell asleep on the couch and awoke at about 6:00 a. m. on the morning of September 6, 1966. He further testified that Evelyn Tankson's sister, her two brothers, a friend named Curtis, and Evelyn's two children were in the apartment with him and Evelyn. According to the defendant, Miss Tankson's mother arrived at the apartment some time that morning since she was in the apartment when he awoke.

Evelyn Tankson's testimony was offered by the defendant to corroborate his alibi testimony. She stated that the defendant was her boyfriend and was with her in her apartment from 4:00 p. m. on September 5, 1966, to 6:00 a. m. on the following morning, but on cross-examination

she said that she and Garnett stayed awake all evening and neither went to sleep. They danced and listened to records. Her testimony also conflicted with the defendant's version when she stated that she and Garnett had dinner at 6:00 p. m. at which time her mother was present.

John French, the brother of Wesley French, testified on direct examination that at about 11:00 p. m. that evening he went to a drugstore with his brother Wesley and with Larry Hicks and returned with the two men to Linda Johnson's house at about 1:00 a. m. that morning. Wesley and Hicks then left and returned at about 3:00 a. m. The witness stated that at no time during that evening did he see the defendant. It appears from the record that the case against John French had been dismissed.

The State then produced the testimony of two police officers who stated that on September 11, 1966, John French made a statement in which he admitted he was accompanied by Wesley French, Larry Hicks, and the defendant on the evening in question.

█ The defendant asserts that his guilt was not established beyond a reasonable doubt because the State's case was totally predicated upon the testimony of the two accomplices who admitted to having made statements inconsistent with their trial testimony and because Wesley French testified after a promise of leniency was made to him by the State. It is true that this State has followed the common-law rule that the uncorroborated testimony of an accomplice, if it satisfies a court or jury beyond a reasonable doubt, is sufficient to sustain a conviction of a felony, but it has also been recognized that such testimony is not the most satisfactory, is attended with serious infirmities and should be viewed with the utmost caution. (People v. Wollenberg, 37 Ill2d 480, 229 NE2d 490; People v. Hansen, 28 Ill2d 322, 192 NE2d 359.) But these infirmities relate to the weight

164

and credibility to be accorded such evidence, which are matters within the province of the jury as the trier of fact.

█ In the instant case, the jury returned a guilty verdict after hearing the State's promise of leniency to Wesley French and after hearing the prosecution's witnesses admit that they had lied on prior occasions. They heard these witnesses substantially corroborate each other. The jury also heard the alibi testimony of the defendant and the attempted corroboration of his girl friend, Evelyn Tankson, which contained divergencies from that of the defendant. John French's testimony that the accused was not with Wesley French or Hicks on the night of the crime was challenged by the introduction of the testimony of the two police officers. Upon a review of the entire record, we conclude that the jury's finding of guilty of the offense of attempted armed robbery should not be disturbed on appeal.

█ The defendant next argues that the verdicts were inconsistent and therefore the guilty verdict should not be allowed to stand. He reasons that the only incriminating evidence, the testimony of Wesley French and Larry Hicks, if believed by the jury, established his guilt for both murder and armed robbery, whereas his alibi defense, if believed, would establish his innocence as to both offenses. The court was confronted with a similar contention in People v. Taylor, 56 Ill App2d 170, 173–174, 205 NE2d 807, wherein the court stated:

"There are, however, strong grounds for affirmation of the judgment entered in the court below in the decisions of the Supreme Court in People v. Garman, 411 Ill 279, 103 NE2d 636 (1952) and People v. Raddatz, 403 Ill 48, 85 NE2d 32 (1949). These decisions, along with others which are unnecessary to cite here, hold that each count in an indictment when charging separate offenses, are separate and

165

distinct as a matter of law, no matter how closely they may be related in fact. Thus in the Raddatz case, supra, the appellant was found guilty of contributing to the delinquency of a minor, but innocent of the charge of indecent liberties. The evidence was the same for both charges, and it was clear that the appellant was guilty or innocent of both charges. Yet the Supreme Court of this State held the jury could return logically inconsistent verdicts, for such verdicts are not legally inconsistent."

Moreover, the verdicts need not be treated as logically inconsistent since the jury could have believed beyond a reasonable doubt that the defendant participated in the armed robbery attempt but had reservations about his actually stabbing the deceased. Therefore, we find no support to this contention advanced by the defendant.

■■ The defense of alibi was raised by the defendant, and he stated that during his stay at his girl friend's house, Evelyn's brothers, sisters, and children were also present. Only Evelyn Tankson testified in support of the alibi defense. In his closing argument to the jury, the prosecutor said:

"Let me talk briefly about the alibi defense. The Defense claims that the alibi is consistent. That Evelyn Tankson and James Garnett are consistent to each other. If that were true, why didn't some of the relatives of Evelyn Tankson take the witness stand to confirm her testimony? Where is the mother of Evelyn Tankson? The testimony of Evelyn was that she was home. The testimony of James Garnett was that when he fell asleep at 11:00 P. M. Monday night, not to awaken until 6:00 A. M. or so the next morning, Evelyn Tankson's mother was not at home. There is only one person who could satisfy that question. She would be a Defense witness. She has not testified."

166

These comments, the defendant contends, improperly shifted the burden of proof from the State to the accused in that the jury was led to believe that it was the duty of the defendant to prove his alibi defense in order to escape conviction. Generally, an accused is under no obligation to call witnesses and his not doing so does not raise the presumption that if called, the witness would have testified unfavorably to the accused. (People v. Rubin, 366 Ill 195, 7 NE2d 890; People v. Munday, 280 Ill 32, 117 NE 286.) When, however, the defendant injects into his case his activities with potential witnesses during a particular period of time to establish an alibi, his failure to produce such witnesses is a proper subject of comment on the part of the State. People v. Swift, 319 Ill 359, 150 NE 263; People v. Sanford, 100 Ill App2d 101, 241 NE2d 485; People v. Gray, 57 Ill App2d 221, 206 NE2d 821; People v. Gray, 52 Ill App2d 177, 201 NE2d 756; People v. Lenihan, 14 Ill App2d 490, 144 NE2d 803; see also: People v. Durso, 40 Ill2d 242, 239 NE2d 842; People v. Williams, 40 Ill2d 522, 240 NE 2d 645.

People v. Smith, 74 Ill App2d 458, 221 NE2d 68, cited by the defendant, held that a prosecutor's closing remarks relative to the defendant's failure to call one witness in support of his alibi defense deprived the defendant of a fair trial. That case is distinguishable from the case at bar. In Smith, the prosecutor went far beyond mere comment by making the unwarranted remark that the absent witness would be "the most honorable of the defense witnesses who testified" and by specifically stressing the subpoena power of the defendant thereby implying that the State was without power to bring in the witness. The later case of People v. Smith, 105 Ill App2d 8, 245 NE2d 23, is also distinguishable because in that case also, the State's remarks were highly prejudicial and misleading and went beyond mere comment. The State's closing argument contained remarks that the

absent witnesses were not produced because they did not want to commit perjury by testifying on behalf of the accused. The prejudice was compounded by the fact that the State was aware that the defendant had in fact requested the issuance of seven subpoenas but six were returned unserved and the one witness who had been served did not appear. The closing comments in the case at bar were not so prejudicial as to constitute reversible error. The defendant did not object to the statements now complained of at trial, and it is also significant that the State's remarks were made in response to defense counsel's closing argument in which he stressed that the alibi testimony was consistent. In addition, the prosecutor did not argue that the defendant failed to call these witnesses because their testimony would be adverse to him. The fact that the State referred to the absent Mrs. Tankson as a "Defense witness" does not, as the defendant contends, force the jury to conclude that only the defense could have called her. Obviously if the defendant had called her she would be considered a defense witness. For these reasons, we do not think that the closing argument was so prejudicial as to deprive the defendant of a fair trial and to thus necessitate a reversal and remandment of the instant case.

█ The State's promise of leniency of Wesley French which was read to the jury contained references to the defendant as the man "who actually stabbed Mr. White" and "who is the actual killer." The defendant asserts that the reading of these statements allowed the State to inject extra-judicial statements which were highly prejudicial and which were not subject to cross-examination. The defendant did not object to the reading of this statement but in fact consented to its being read. Having failed to make timely objection when the remark was made precludes the defendant from urging such an objection for the first time on appeal. (People v. Switalski, 394 Ill 530, 69 NE2d 315.) Moreover, we

fail to comprehend how the aforementioned references could have prejudiced the accused in view of the fact that the jury returned a verdict of not guilty of murder, the crime to which the complained of statements refer.

■ It is also contended by the defendant that the use of Wesley French's testimony infringed his rights to due process of law and equal protection of the laws since the State arbitrarily chose to give one coindictee for murder more lenient treatment in order to help secure a conviction of the other. We find no merit to these constitutional objections. (See: Lisenba v. California, 314 US 219.) The State's use of the testimony of an accomplice who has been promised leniency is judicially well recognized and the fact that such a promise was made goes to the weight and credibility to be accorded such testimony. People v. Williams, 17 Ill2d 193, 161 NE2d 295; People v. McGuirk, 312 Ill 257, 143 NE 855.

■ The defendant finally contends that the sentence was excessive and should be reduced. The defendant stands convicted of the crime of attempted armed robbery which carries a maximum penalty of fourteen years. (Ill Rev Stats 1965, c 38, § 8–4(c) (2).) He was sentenced to a term of from ten to twelve years. He was nineteen years of age at time of trial and had been previously sentenced to six months' imprisonment by a military court martial. The defendant had participated in an armed robbery attempt during which an innocent victim was viciously stabbed. We reject the reasons put forth by the defendant in support of his request for a reduction of sentence. Under these facts, the trial judge did not abuse his discretion in imposing the sentence.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.