THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANNY R. DAWSON, Defendant-Appellant.

(No. 11981; ▮▮▮▮▮▮▮▮▮▮)

Fourth District—May 2, 1974.

SMITH, J., dissenting.

Michael J. Costello, of Springfield, for appellant.

Edwin R. Parkinson, State's Attorney, of Jacksonville, for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant was found guilty by a jury in the circuit court of Morgan County of the offense of armed robbery but not guilty of the alleged murder arising out of the same armed robbery. Judgment of conviction was entered on the verdict. Defendant was sentenced to an indeterminate term of 15 to 40 years and appeals.

While several issues are urged on appeal, we need discuss only the one which is dispositive. Defendant avers that the verdicts were legally inconsistent. We agree.

Defendant and his accomplice, David L. Hawkins, were apprehended by the Morgan County authorities for the armed robbery of a Wareco Station located in Jacksonville, Illinois, and the murder of one Charles Duane McKinney, the service station attendant. On December 15, 1971, defendant and Hawkins were indicted in a three-count indictment: Count I charged defendant with murder in that "he did without lawful justification, intend to kill or do great bodily harm to Charles Duane McKinney, and did by the use of a gun shoot and kill the said Charles Duane McKinney," in violation of section· 9—1(a)(1) of the Criminal Code ·(Ill. Rev. Stat. 1969, ch. 38, ¶ 9—1(a)(1)); Count II charged dedant with murder in that "he did without lawful justfication, [*sic*] shoot and kill with a gun, Charles Duane McKinney, while committing a forcible felony, to-wit: an armed robbery," in violation of section

9—1(a)(3) of the Code; Count III charged defendant with the offense of armed robbery in that "he did take property from the person or presence of another, to-wit: Charles Duane McKinney, at the Wareco service station at 602 N. Main St., Jacksonville, Illinois, while armed with a dangerous weapon, * * *." Hawkins plead guilty of the charge of murder and was sentenced to an indeterminate term of 35 to 95 years in the Illinois State Penitentiary. See *People v. Hawkins*, 14 Ill.App.3d 549, 302 N.E.2d 128.

Defendant's trial commenced on March 17, 1972. David L. Hawkins was called to testify for the State. He testified that he was serving a sentence of 35 to 95 years for the murder of Charles McKinney. He positively identified the defendant as being the same individual that had been with him on the night of the incident in question. He stated that he had known the defendant for 5 or 6 years.

Hawkins testified that he and defendant had been drinking beer in Winchester until approximately 1 A.M. on November 16, 1971. Thereafter they went to Jacksonville to spend the night at defendant's sister's residence. On the way to Jacksonville he and defendant had a conversation in which defendant allegedly stated that they needed more money to purchase beer and that defendant knew of a gas station that would be easy to rob.

They arrived at the gas station around 1:45 A.M., entered and bought a pack of cigarettes. Thereafter they left and drove around the block. On the way back to the station, defendant allegedly handed Hawkins a pistol and said, "If the dude gives you any trouble, just shoot him."

At this point in Hawkins' testimony, he identified People's Exhibit No. 6A—a .22-calibre pistol—as the weapon used in the incident. Hawkins stated that the pistol was owned by defendant and that it was normally kept in the glove compartment of defendant's automobile.

The witness stated that after they had circled the block, defendant let him out. Hawkins proceeded to the Wareco Service Station where he shot and robbed the victim. When asked by the State's Attorney where the defendant was during this time, the witness stated: "He stayed out." Hawkins took the coin changer and an undetermined sum of cash from the deceased. Once in the automobile, he stated he dumped the contents of the coin changer, and all the bills onto the seat of the car. The defendant then drove into the country on the "Poor Farm Road". Defendant stopped his car on a bridge over a creek where they split the proceeds of the robbery. Defendant threw the gun and coin changer into the creek. He then proceeded to his sister's residence in order to establish an alibi. The witness contended that Dawson suggested that they needed an alibi.

On cross-examination, defense counsel questioned Hawkins concerning the nature of his relationship with defendant. Hawkins conceded that defendant was not an intimate friend, but rather a casual acquaintance. He also admitted he was high on drugs the night of the incident; and that he was jobless at that time and dependent upon his mother and uncle for support; and that he had experimented with several types of drugs—angel dust in particular. This drug is a combination of cocaine, heroin and morphine. Under further cross-examination, the witness admitted he really did not know how many times he shot the attendent and that he could not clearly remember the defendant telling him that he should shoot the gas station attendant if the latter gave him any trouble. His lapse of memory was due to the fact that he had taken some heroin that evening, but he was positive that defendant had suggested that they needed an alibi. Cross-examination ended with a discussion of the condition of defendant's automobile on the evening of the incident.

When defendant took the stand, his testimony was completely at odds with that given by Hawkins. The defendant admitted that the murder weapon was his and presented a valid registration for the gun. He also admitted that he kept the pistol in the glove compartment of his car. He contended that the pistol was never loaded while it was in his glove compartment.

Concerning the night of the incident, the defendant testified that he met Hawkins around 9:30 or 10 P.M. on the evening of November 15. He and Hawkins eventually decided to go to Jacksonville where they intended to "find some girls." They stopped at the Wareco Station in Jacksonville around 1:30 A.M. in order to purchase some cigarettes. Defendant admitted that he and Hawkins had been drinking before they went to Jacksonville. He denied that he ever suggested to Hawkins that they should rob the Wareco Station or that Hawkins should kill the attendant. After leaving the filling station, he and Hawkins drove away in his automobile. The car eventually died and he told Hawkins to go back to the Wareco Station to seek assistance. After Hawkins left, defendant got out of his automobile, opened up the hood and attempted to ascertain the nature of his trouble. He found a battery post was loose. He tightened the battery post and the car started. Hawkins had not yet returned so defendant backed up and turned onto a side street. Just at that moment, Hawkins came around the corner and got into the car. Defendant then drove off. According to defendant, Hawkins did not say anything concerning the robbery and the shooting. He did not notice anything in Hawkins' hand when he entered the car. After defendant had driven three or four blocks, Hawkins stated he had just

killed the gas station attendant. At first defendant thought Hawkins was joking, so he kept on driving. He drove out to the edge of town in order to permit Hawkins to relieve himself and stopped as soon as he came to the "Poor Farm Road". It was at this time the defendant noticed the money changer and the gun lying on the floorboard of the car. He realized that Hawkins was not joking. Defendant stated he grabbed the gun and threw it, for he was afraid that Hawkins might try to shoot him. Defendant contended that at no time did he intend or plan with David Hawkins to rob the Wareco Station, nor did he instruct Hawkins to kill the attendant.

On cross-examination, the defendant denied that he had suggested to Hawkins that they should go to his sister's in order to establish an alibi. However, he admitted that he split the proceeds of the robbery with Hawkins.

The jury found defendant guilty of Count III of the indictment—armed robbery; and not guilty of Count I—murder, and not guilty of Count II—murder committed in the course of the armed robbery.

Defendant contends that the jury rendered an inconsistent verdict when it returned the verdict of not guilty of Count II, murder committed in the course of the armed robbery, and guilty of Count III, armed robbery, and he should be discharged. He argues that armed robbery, being a forcible felony, is an essential element of felony murder; therefore, an acquittal on the charge of felony murder meant that the defendant had to be innocent of armed robbery. The State argues that the verdicts are not inconsistent because the jury could have found that the State failed to prove beyond a reasonable doubt the additional element of causing the death of the victim that is not present in the crime of armed robbery.

■■ Both parties submit that *People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840, is controlling. In *Hairston*, the supreme court said:

"* * * But where, as here, the verdicts inconsistently acquit and convict of separate crimes arising from the same act, our courts have followed the view that logical consistency in verdicts in such instances is not necessary, so long as the verdicts are not legally inconsistent. [Citations.] * * * [W]e follow the view that: 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.'" (46 Ill.2d 348, 361—362.)

In determining whether verdicts are legally inconsistent, one must examine the elements of the crimes involved. If the crimes that the verdicts of acquittal and conviction are rendered on are composed of dif-

ferent elements, then different verdicts can stand. If the elements of the crimes are the same, then the verdicts must be the same. The test is whether the elements in the count wherein the accused is acquitted are identical to, or must be found in order to support a guilty verdict upon the count which resulted in a conviction. If so, the verdicts must be identical. (*People v. Joyner*, 50 Ill.2d 302, 278 N.E.2d 756.) A verdict which acquits the accused of a crime which includes acts necessary for the commission of another crime for which he is found guilty is inconsistent.

■■■ In this jurisdiction, the rule is that when a murder is committed during a robbery, all participants in the robbery are deemed equally guilty of the murder, and it is immaterial who fired the fatal shot. The defendant need not have been actually present at the killing in order to be guilty under the felony-murder doctrine. *People v. Johnson*, 55 Ill.2d 62, 302 N.E.2d 20.

The elements of felony murder are found in section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971), ch. 38, par. 9—1, which provides in part:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> &ast; &ast; &ast;
>
> (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

Under section 5—2 of the Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2), any individual who aids or abets the planning or commission of a crime is legally accountable for the conduct of the principal. Section 5—2 would make an accomplice liable for the felony murder committed by his principal. *People v. Morris*, 1 Ill.App.3d 566, 274 N.E.2d 898.

■■ The jury was given instructions on accountability, armed robbery and murder which included a paragraph on felony murder. These instructions state in part as follows:

> "A person is responsible for the conduct of another person when either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime.
>
> A person commits the crime of armed robbery who, while armed with a dangerous weapon, takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

To sustain the charge of armed robbery, the State must prove the following propositions:

FIRST; That the defendant took money from the person or presence of Charles Duane McKinney; and

SECOND; That the defendant did so by the use of force or by threatening the imminent use of force; and

THIRD; That the defendant was armed with a dangerous weapon.

If you believe from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

To sustain the charge of murder, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of Charles Duane McKinney,

Second: That when the defendant did so,

(1) he intended to kill or do great bodily harm to Charles Duane McKinney, or

(2) he knew that his act would cause death or great bodily harm to Charles Duane McKinney, or

(3) he knew that his acts created a strong probability of death or great bodily harm to Charles Duane McKinney, or

(4) he was attempting to commit or was commiting the crime of armed robbery.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or

he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual; or

he is attempting to commit or is committing the crime of armed robbery."

They found defendant not guilty of murder as charged under section 9—1(a)(1) and 9—1(a)(3) of the Criminal Code, but guilty of armed robbery. It is clear from the above cited authority that the jury's verdicts were legally inconsistent as well as logically inconsistent.

This court is aware of the line of authority which holds that each count is an indictment, when charging separate offenses, are separate and distinct as a matter of law, no matter how closely they may be related in fact, and that consistency in a verdict is not necessary. *Dunn v. United States*, 284 U.S. 390, 76 L.Ed. 356, 52 S.Ct. 189.

In *People v. Taylor*, 56 Ill.App.2d 170, 205 N.E.2d 807, the court stated the above cited rule and discussed *People v. Raddatz*, 403 Ill. 48, 85 N.E.2d 32. The court noted that in *Raddatz* the appellant was found guilty of contributing to the delinquency of a minor, but innocent of the charge of indecent liberties. The evidence was the same for both charges and it was clear that the appellant was guilty or innocent of both charges; however, the appellate court noted that the supreme court found the jury could return a logically inconsistent verdict as long as the verdicts were not legally inconsistent.

In *People v. Garnett*, 113 Ill.App.2d 159, 251 N.E.2d 761, the court therein applied the rule found in *Taylor*. It held that the verdicts of guilty of attempted armed robbery and not guilty of murder were not inconsistent. The court predicated its holding upon the reasoning that the verdicts need not be treated as logically inconsistent since the jury could have believed beyond a reasonable doubt that the defendant participated in the armed robbery attempt, but had reservations about his actually stabbing the deceased.

In *People v. Sanders*, 6 Ill.App.3d 820, 286 N.E.2d 785, it was held that a guilty verdict in the charge of armed robbery and an acquittal on the charge of murder was not legally inconsistent notwithstanding the apparent logical inconsistencies of the verdicts. The court noted that the crimes charged in the indictment were composed of different elements, even though they arose out of the same set of facts. The court relied on the rule found in *Hairston*.

■■ We find these cases to be inapposite to the case at bar. This case presents a unique problem of apparent first impression. Here the court is confronted with an indictment that in Count I charges defendant with murder under section 9—1(a)(1) and in Count II, murder committed in the course of a forcible felony under section 9—1(a)(3), and in Count III with armed robbery. The latter two offenses, while being separately charged, are in law a single offense if the armed robbery resulted in a

death. For where two or more defendants have common design to commit an unlawful act, any act done by any of them in furtherance of the common design is the act of all, and all are generally guilty of whatever crime is committed. If the defendant was guilty of armed robbery that was accomplished by Hawkins (the principal), then he is liable for all of the acts of Hawkins, including the murder. When the jury found defendant not guilty of murder under sections 9—1(a)(1) and 9—1(a)(3) of the Criminal Code, they actually acquitted him of any participation in the only unlawful act giving rise to the murder— the armed robbery. The verdict of guilty of armed robbery was inconsistent for it found that defendant had participated in the crime that resulted in the felony murder of the gas station attendant. To say that defendant was not guilty of murder under section 9—1(a)(3), the jury had to find that defendant was not guilty of armed robbery.

This case does not present a set of facts like those found in *Garnett* where the jury could have believed that the accused participated in armed robbery, but did not actually murder the deceased. The fact that defendant was found guilty of armed robbery meant he is liable under the theory accountability propounded by the State for the felony murder of the deceased. The defendant herein, as opposed to those in the *Garnett* and *Sanders* cases, was indicted for felony murder (ch. 38, par. 9—1(a)(3) as well as murder (ch. 38, par. 9—1(a)(1)) and armed robbery.

The instructions given to the jury concerning the two murder charges were inartfully drawn in that two offenses were joined together in the same instruction. Also, in the body of the instruction disjunctive language was used, yet the last sentence of the instruction required the jury to view the instruction in the conjunctive. The result being that the instruction made it difficult for the jury to find the defendant guilty of murder under any theory.

We now turn to defendant's contention that he be discharged. In *Hairston*, the court stated that for a double jeopardy claim to be viable, defendant must establish that the two offenses charged are in law and in fact the same offense. The court went on to note it is the identity of the offense and not of the act which is referred to in the constitutional guarantee against double jeopardy. Furthermore, the court noted that double jeopardy bar has not application where two separate and distinct crimes are committed by one and the same act. The court stated:

> " '* * * The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an

additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'" 46 Ill.2d 348, 358, 263 N.E.2d 840, 847.

██ The defendant has been acquitted of felony murder. Such amounts to an acquittal on the charge of armed robbery since under the facts and law of this case the two offenses are in law the same offense.

Accordingly, the judgment of conviction for armed robbery is reversed.

Reversed.

. TRAPP, J., concurs.

Mr. JUSTICE SMITH, dissenting:

I would affirm the conviction for armed robbery. The majority would acquit and discharge the defendant by concluding that the verdict of not guilty of murder and the verdict of guilty of armed robbery are legally inconsistent. This they do, as we shall see, by evading or avoiding the result in *Hairston* while on the surface approving its principles. In *Hairston*, as here, the liability of the defendant was grounded upon our accountability statute. There the defendant was indicted for murder, attempted murder and solicitation to commit murder. There the defendant argued that a verdict of guilty of solicitation is inconsistent with a verdict of not guilty of murder and attempted murder, and thus his discharge was required. The supreme court rejected this argument and affirmed the conviction for solicitation. When the supreme court there affirmed, why the majority here would acquit escapes me.

If these verdicts are so legally inconsistent that a guilty verdict of armed robbery cannot survive, then the same legal inconsistency which destroys that verdict destroys the not guilty verdict on murder also. The court in *Hairston* stated at page 361, "* * * It was aptly stated by a Missouri court in *State v. Akers*, 213 S.W. 424: 'If the verdict * * * was too inconsistent to support a judgment of conviction, it was likewise too inconsistent to support a judgment of acquittal. As has often been said, "It is a poor rule ·which does not work both ways"'." Our court stated unequivocally that where inconsistent verdicts of guilty were returned on separate indictments or separate counts of a single indictment, a reversal and a new trial must follow, and quoted with approval at page 362 from *State v. Baird*, 93 P.2d 409, 412, as follows: "'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, arising out of the same set of facts.'" Our supreme court then concluded that the

verdicts there were legally consistent if not logically so, and the defendant's claim of a right to discharge must be denied. In *People v. Sanders*, 6 Ill.App.3d 820, 286 N.E.2d 785, the defendant was charged with murder, attempted murder and armed robbery. He was acquitted on the first two charges and convicted on the armed robbery charge. The court in *Sanders* specifically held that the verdict was legally consistent although not logically so. The crimes charged in the indictment were composed of different elements although they arose out of the same set of facts and cited *Hairston* with approval. It seems clear that we have an identical situation here. If the jury in this case had found the defendant not guilty of armed robbery and guilty on the felony murder count, a conviction on that count could not stand for the very simple reason that a felony murder conviction cannot be sustained if no felony was committed. In such instance, you have truly legally inconsistent verdicts. What the majority overlooks is that there were three counts in this indictment. The two murder counts were submitted under the same instruction and a single verdict returned. When one reviews the evidence, it seems quite clear that there is a rational basis upon which the jury predicated their single not guilty verdict on murder and their single guilty verdict on armed robbery. If they believed the testimony of Dawson that his car broke down and he sent Hawkins back to the filling station for help rather than the testimony of Hawkins, then there is a factual basis for distinguishing between the culpable criminality of Hawkins and the culpable criminality of Dawson. Hawkins by his own testimony had committed the actual robbery and murder. He testified that the defendant told him to rob the service station, handed him a loaded revolver and stated, "If the dude gives you any trouble, just shoot him". Hawkins "shot him, robbed him, come back out." Dawson denied this testimony of Hawkins and said he had sent Hawkins to the service station because his car had stopped on him. However, he did divide the proceeds of the robbery. On the theory of accountability, the majority seems to feel that the jury should have returned a verdict of guilty as to murder. Perhaps they should have, but I know of no rule of law that required them to do so. They did find him guilty of armed robbery.

To hold that this defendant is legally unaccountable on this three-count indictment on a theory of inconsistent verdicts and judicially hold that he is accountable for nothing strikes me as far more inconsistent than the jury's verdicts, either legally, logically, or factually.

Accordingly, it seems to me that in reliance on a purely legalistic theory, the majority uses our accountability statute to discharge a guilty defendant instead of using that statute as it was intended, that is, to

authorize convictions on the principle of accountability, although there was no active actual participation or presence at the scene by the persons charged. It seems to me that if *Hairston* is to be followed at all, it should result in an affirmance of the defendant's conviction. That is what they did in *Hairston*; that is what we should do here. Cases collected in 18 A.L.R.3d 259, 274, suggest that this is by far the practical, prevailing view.