THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME GOLDEN, Defendant-Appellant.

(No. 60166;

First District (4th Division)—March 26, 1975.

*Rehearing denied July 25, 1975.*

James J. Doherty, Public Defender, of Chicago (John X. Breslin and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Ricky L. Petrone, Asssistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. The defendant was charged with armed robbery and three counts of murder. Following a jury trial, defendant was found not guilty on all three counts of murder but was found guilty of armed robbery and involuntary manslaughter. The trial court sentenced defendant to a term of from 10 to 30 years for the armed robbery and from 3 to 9 years for involuntary manslaughter, both sentences to run concurrently.

The issues presented on appeal are (1) whether the trial court improperly instructed the jury that involuntary manslaughter is a lesser-included offense to felony-murder; (2) whether the prosecutor's closing arguments prejudiced the defendant; and (3) whether the trial court properly sentenced the defendant on the armed robbery charge.

The defendant, Jerome Golden, was indicted for the armed robbery of Perry Hooks, a cab driver, and for the murder of Boss Anderson, defendant's brother. At trial, Perry Hooks, the cab driver who was the victim of the armed robbery, testified that on March 31, 1972, he was employed by the Checker Taxi Cab Company. Hooks reported to work that evening about 6 P.M. At approximately 10:30 P.M. he went to Sportsmans Race Track in order to bet on the last two races. When Hooks left the track and approached his cab he saw two people standing next to the vehicle. The woman was later identified as Laura Christopher and the man as Boss Anderson. Hooks had never seen either of them before. They asked to go to 530 West 61st Street in Chicago. The passengers sat in the rear seat of the cab, and Hooks put the meter flag down. When Hooks reached his destination he was not paid his fare, but instead was asked to wait on the woman, who indicated she was going farther. After waiting 10 to 15 minutes, Hooks entered the apartment. Mr. Anderson told him Miss Christopher would be ready soon. Hooks sat down on the arm of a chair next to the door. A few minutes

later, three young men entered the building. Hooks identified one of them as the defendant, Jerome Golden. Mr. Anderson introduced the defendant as his brother. The defendant then went into another room of the apartment. Shortly thereafter the defendant returned and stated he was going outside to check something. When he returned defendant went back into the other room. Hooks heard the defendant ask Laura Christopher for money. Miss Christopher refused, and the two began to argue as they walked out of the room into the hallway. Hooks was frightened by the argument and decided to give up his fare and leave. As Hooks started to leave, however, the defendant brandished a gun and ordered Hooks to lie on the floor. Defendant then told his two friends to take Hooks' watch and ring. At this time Miss Christopher was standing between Hooks and the defendant. Mr. Anderson then stepped between Miss Christopher and the defendant. Defendant ordered Anderson to get out of the way. Anderson replied that if the defendant was going to shoot anyone it would have to be Anderson. The defendant then fired one shot at Anderson, killing him. After the shot was fired, the defendant's two friends stepped on Hooks' hand and took his watch and ring, breaking his thumb in the process. They also took his wallet which contained $55. The two men then walked over to where the defendant was standing. Hooks got up and ran out the door. He hailed another taxi and began to search for a policeman. When a police car was spotted, Hooks informed the police of the incident. He returned to the scene of the crime with the police, where Mr. Anderson's body was found.

Laura Christopher testified for the defense that she and her brother, Boss Anderson, had met Hooks at the race track and had socialized with him throughout the evening. Hooks offered to give them a ride and did not put the meter flag down. Miss Christopher said the three of them were planning to go to a night club.

The defendant, Jerome Golden, testified in his own behalf that he went to visit his mother at 530 West 61st Street at approximately 1 A.M. on the night in question. When he arrived he noticed the victim, Hooks, sitting by the front door. Defendant testified he asked Hooks to leave, but he refused. Defendant then left the room and returned with a gun. Hooks threw Miss Christopher at the defendant and ran. Consequently, Hooks was not in the apartment when the gun discharged. Defendant also stated his two friends fled with the cab driver when they saw the gun. Defendant further testified Mr. Anderson jumped between the defendant and Miss Christopher and grabbed the gun. The gun then discharged accidentally. Defendant said he ran from the apartment because he was scared.

At the close of all the evidence, the trial court gave its instructions to the jury. The instructions included an instruction on armed robbery and instructions on each of the three counts of murder. The court also gave the jury, over objection of the defense counsel, general instructions on involuntary manslaughter. The jury returned a verdict of not guilty on all three counts of murder, but found the defendant guilty of armed robbery and involuntary manslaughter. He was sentenced to a term of from 10 to 30 years for armed robbery and from 3 to 9 years for involuntary manslaughter, both sentences to run concurrently.

The defendant first contends the trial court improperly instructed the jury that involuntary manslaughter is a lesser included offense of felony-murder. The court gave the jury the following instructions with regard to involuntary manslaughter:

"People's Instruction No. 5—given.

The defendant is charged with the crime of armed robbery and murder. Murder includes the offense of involuntary manslaughter. The defendant has pleaded not guilty.

\*   \*   \*

People's Instruction No. 15—given.

A person commits the crime of involuntary manslaughter who causes the death of another by acts which are performed recklessly and are likely to cause death or great bodily harm to another.

\*   \*   \*

People's Instruction No. 16—given.

A person acts recklessly when he consciously disregards a substantial and an unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross departure from the care which a reasonable person would exercise in the situation.

\*   \*   \*

People's Instruction No. 17—given.

To sustain the charge of involuntary manslaughter, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of Boss Anderson; and

Second: That the defendant performed those acts recklessly; and

Third: That those acts were likely to cause death or great bodily harm.

If you find from your consideration of all the evidence that each

of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

■■■ We believe the jury was properly instructed by the trial court. It is well established in Illinois that an indictment charging murder includes a charge of manslaughter. (*People v. Peeler* (1973), 12 Ill.App.3d 940.) In *People v. Speed* (1972), 52 Ill.2d 141, 145, the supreme court, citing its decision in *People v. Lewis* (1941), 375 Ill. 330, stated:

" 'Since it is the general rule that an indictment for murder involves all other grades of homicide which the evidence tends to establish, an indictment charging murder includes therein a charge of manslaughter. [Citations.] Consistently with this reasoning we have expressly held that the crime of manslaughter is embraced in a charge of murder, and the accused may be found not guilty of murder and convicted of manslaughter.  *  *  *' "

In all criminal cases, where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser-included offense, an instruction defining the lesser offense should be given. (*People v. Latimer* (1966), 35 Ill.2d 178.) A review of the record in the case at bar indicates the jury could reasonably have determined the defendant acted recklessly when he brandished the gun to scare the cab driver.

■■ Defendant argues that a verdict finding involuntary manslaughter cannot stand because it is a lesser-included offense of felony-murder and is an inconsistent verdict with the not guilty verdict entered on the murder count. We are aware that the Appellate Court of the Fourth District of Illinois recently held in *People v. Dawson* (1974), 19 Ill.App.3d 150, that a defendant acquitted of murder could not be found guilty by the jury of armed robbery, holding that they were inconsistent verdicts. We cannot agree with this conclusion but do agree with the dissent in that opinion by Mr. Justice Smith. We think our supreme court has spoken on the subject in *People v. Hairston* (1970), 46 Ill.2d 348, and that case is controlling here. In *Dunn v. United States* (1932), 284 U.S. 390, 76 L.Ed. 356, 52 S.Ct. 189, the Supreme Court of the United States said that each count is an indictment when charging separate offenses, are separate and distinct as a matter of law, no matter how closely they may be related in fact, and that consistency in a verdict is not necessary. The appellate court of this State followed that rule in *People v. Taylor* (1965), 56 Ill.App.2d 170, and *People v. Garnett* (1969), 113 Ill.App.2d

159, and again in *People v. Sanders* (1972), 6 Ill.App.3d 820. We hold that involuntary manslaughter is a lesser-included offense of felony-murder. Involuntary manslaughter was therefore an issue in the present case, and the court properly instructed the jury as to that offense.

■■ The defendant next contends the prosecutor's closing argument to the jury was prejudicial error. Defendant's contention is without merit. The statements made by the prosecutor in his closing argument did not contain anything of a prejudicial nature which would warrant reversal. In light of the entire record, the defendant's guilt was established beyond a reasonable doubt, and the prosecutor's remarks were not such as would have changed the verdict.

The defendant finally contends his sentence for armed robbery must be modified because it was based in part on the jury's verdict of guilty of involuntary manslaughter. Defendant argues that since the conviction on the involuntary manslaughter charge must fall, the sentence for armed robbery must be modified.

Defendant's contention is without merit. The law is well settled that where separate convictions can be sustained, then separate sentences can be imposed on the defendant. (*People v. Studebaker* (1973), 11 Ill.App.3d 924.) The trial court did not abuse its discretion in sentencing the defendant in the instant case, and this court will not modify the sentences imposed on the defendant.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.