MOSES REED, Plaintiff-Appellant, *v.* RICHARD KNOL, JR., Defendant-Appellee—(JANICE HUIZENGA, Plaintiff-Appellee, *v.* MOSES REED, Defendant-Appellant.)

(No. 55060;

First District—August 14, 1972.

Goldman & Heeser, of Chicago, (Gerald A. Goldman, of counsel,) for appellant.

Howard C. Sorenson, of Pretzel, Stouffer, Nolan & Rooney, of Chicago, (Joseph B. Lederleitner, of counsel,) for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This litigation consisting of two consolidated actions and counter-claims was instituted to recover damages for injuries sustained in a three car collision. On Sunday, January 19, 1964, at about 8:30 P.M., a Chevrolet which was travelling north on the innermost lane of the Calumet Expressway struck an Oldsmobile from behind and pushed it across the median strip and onto the south-bound lane of traffic where it was struck by a Buick. At the location of the accident, the Calumet Expressway heads in a north—south direction and has three lanes of traffic for north-bound traffic and three lanes for south-bound traffic separated by a median strip which is seven to eight feet wide. At the time of the occurrence, the road was wet due to rain earlier in the day, and the area was dark.

Moses Reed, the driver of the Oldsmobile, and Irene Grantham, a passenger in that vehicle, filed a suit against Richard Knol, the driver of the Chevrolet, and Virgil Woodward, the driver of the Buick. Both Knol and Woodward filed counter-claims. Janice Huizenga (now Janice Knol), a passenger in the Chevrolet, filed an action against Reed, and the two causes were consolidated. Prior to trial, Woodward's counter-claim was withdrawn. The causes proceeded to trial by jury and at the close of all the evidence verdicts were directed in favor of Woodward. The jury returned verdicts (1) in favor of Irene Grantham and against Richard Knol in the sum of $1500, (2) in favor of Janice Huizenga and against Moses Reed in the amount of $15,000, (3) against Moses Reed and in favor of Knol on Reed's complaint and (4) against Knol and in favor of Reed on Knol's counter-claim. Judgment was entered on the verdicts, but after a post trial motion the judgment in favor of Janice Huizenga was reduced by remittitur from $15,000 to $8,000.

Moses Reed appeals from the judgment and contends (1) that the verdicts are against the manifest weight of the evidence and (2) that the verdicts were the result of passion and prejudice.

The testimony concerning the circumstances surrounding the accident is at variance. According to Moses Reed and Irene Grantham, the occupants of the Oldsmobile, the automobile in which they were riding, was travelling in the middle lane for north-bound traffic on the Calumet Expressway at a rate of 40 miles per hour when it was struck at the rear and went out of control. Irene Grantham testified that she had a conversation with Richard Knol at the hospital in which he said, "Sorry, I didn't see you."

Richard Knol testified that just prior to the accident he was travelling in a northerly direction on the Calumet Expressway at a rate of 55 miles per hour next to the median strip on the innermost lane of traffic. When he saw a vehicle 30 to 40 feet ahead of him back up from the median strip onto the expressway, he immediately applied his brakes; but, nevertheless, the front end of his car struck the left side of the backing vehicle at a point behind the door and in the vicinity of the rear wheel. Janice Huizenga, a passenger in the front seat of Knol's car testified that just prior to the impact the front half of Reed's Oldsmobile was on the median strip and the back half was in the lane of traffic in which she and Knol were travelling. She further stated that the Oldsmobile appeared to be making a U-turn.

Edward Ragan, who in 1964 was employed by the Emergency Traffic Patrol, testified that at the time of the accident he was standing on the shoulder of the north-bound lanes assisting a motorist whose automobile had a flat tire. He stated that he saw a vehicle near the median strip

which appeared "to back off and proceed and go forward," and that this vehicle was struck on the left side by another car. On cross-examination he was asked whether he actually witnessed the accident and he responded, "Yes, I was standing alongside of my truck, partially with my left shoulder towards the pavement watching this, and then, I seen an object of a car or something that resembled a car toward the median strip. Before anything I could do or holler or anything, this other car that was coming down the highway struck this car." It was then brought out that after receiving a subpoena Ragan sent a letter to Knol's attorney in which he denied seeing the accident or any of the automobiles involved until after he heard a crash. Upon further questioning he denied that the statements in the letter were true, and he explained that he sent the letter because he did not want to become involved and because he thought that he would not be called to testify after the letter was sent.

■■ Reed contends that the verdicts of the jury are against the manifest weight of the evidence and argues that the testimony of Richard Knol and Edward Ragan are without probative value because of claimed inconsistencies in their testimony and because of contradictions between earlier out-of-court statements and the testimony at trial. Inconsistencies and contradictions which exist in the testimony of a witness should be considered by the trier of fact in determining the weight to be given to a witness's testimony. The existence of contradictions and inconsistencies by themselves do not necessarily destroy the credibility of a witness as a matter of law. As the Supreme Court stated in *Guthrie v. Van Hyfte,* 36 Ill.2d 252, at 258, 222 N.E.2d 492, at 495, "The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies."

■■ The jury heard all of the testimony and was informed of the prior inconsistent statements. It was the function of the jury to weigh the evidence and to resolve conflicts in the testimony. A reviewing court will not disturb the verdict of a jury unless it is against the manifest weight of the evidence or in other words unless the opposite conclusion is clearly evident. (*Corder v. Smothers,* 86 Ill.App.2d 237, 229 N.E.2d 558.) In the present case, the testimony of Moses Reed and Irene Grantham was contradicted not only by the opposing party, but also by a disinterested witness. Both Knol and Ragan testified clearly and unequivocally that Reed backed his automobile onto a lane of traffic on the expressway before the collision. There was sufficient evidence in the record to warrant the verdicts and they will not be disturbed on review.

It is next contended, that Reed was prejudiced and denied a fair trial by repeated references to delirium tremens and to chronic alcoholism and that the prejudicial effect of these references was demonstrated by the size of the verdict for Janice Huizenga in relation to her out of pocket expenses and loss of earnings which amounted to approximately $500.

Three days after the accident, Moses Reed became restless, incoherent and irritable, and experienced hallucinations and tremors. This condition was diagnosed by Dr. Joseph Terrell, the treating physician, as delirium tremens caused by chronic alcoholism. The drug, thorszine, was administered to treat this condition. At trial, Dr. Terrell, after explaining his diagnosis of Reed's injuries was asked by the attorney for Reed, "Is that [delirium tremens] a term that is usually used in connection with people who are alcoholics?" He replied, "Can be often times." Upon further inquiry, Dr. Terrell stated that the restlessness, confusion and incoherency exhibited by Reed and hallucinations experienced by him could have been caused by chemical imbalance, alcoholism, toxicity, or a number of other things.

On cross-examination Dr. Terrell was asked without objection:

"Q. And when you made the diagnosis of delirium tremens in the hospital record, was it not your opinion that the cause of it was chronic alcoholism?

A. That was my opinion at the time, yes. I had no other history. I had not known Mr. Reed prior to this time so I had no information to go on."

Dr. Terrell further stated that over a period of 15 days Reed was administered the drug, thorszine, which is used for the treatment of a person suffering from the effects of chronic alcoholism and that Reed responded to the preparation.

Dr. Allan Hirschtick, an orthopedic surgeon, testified as an expert on behalf of Moses Reed and was asked with reference to a hypothetical person, "* * * do you have an opinion based upon a reasonable degree of medical and surgical certainty as to the cause or reason for this person manifesting, starting the third day of his hospitalization and continuing for 3 days, restlessness, hallucinatory episodes, concussion, and tremors?" He replied, "Yes, the condition resulting from trauma— severe trauma to bones—usually long bones—condition known as fat embolism." During cross-examination, he was asked two questions related to delirium tremens and chronic alcoholism, but after a lengthy discussion in chambers, the questions and answers were stricken.

■■ It is urged, "That this line of questioning with reference to delirium tremens, DTS, chronic alcoholism in relationship to treatment given

Moses Reed aroused prejudice in the jury." In determining whether the references to chronic alcoholism deprived Reed of a fair trial, it is necessary to look to the record as a whole. All of the questions concerning chronic alcoholism were posed to doctors who were testifying to the extent and causation of Reed's medical problems. The references to chronic alcoholism could be prejudicial to Reed on the question of liability only (1) if contrary to some of the expert medical testimony the jury believed that the symptoms exhibited on the third day of hospitalization were caused by chronic alcoholism and (2) if the jury inferred from the possible fact of alcoholism that Reed was intoxicated at the time of the accident; but at no place in the record before us is there a direct statement, testimony, or argument that Reed had been drinking on the day in question or that he was intoxicated at the time of the accident. Prior to the time that counsel for Richard Knol and Janice Huizenga posed the purportedly prejudicial questions the jury knew that Dr. Terrell had diagnosed one of Reed's problems as delirium tremens and that chronic alcoholism was a cause of that disorder because these matters were brought out by Reed's counsel on direct examination of Dr. Terrell. Since the information concerning the diagnosis of delirium tremens and the relationship of chronic alcoholism to this diagnosis was initially presented before the jury by Reed's counsel, we cannot say that the series of questions asked relative to these matters by the attorney for Knol and Miss Huizenga deprived Reed of a fair trial.

■■ It is finally argued that the $15,000 verdict in favor of Janice Huizenga is the excessive result of passion and prejudice which cannot be corrected by the Court's remittitur to $8,000. Janice Huizenga testified that as a result of the crash her head hit and broke the rear view mirror, her face and her head went through the windshield, and her leg knocked against the radio knob. She was unconscious for a few moments and was cut badly. She was taken to the hospital for treatment. Subsequent to the accident and continuing to the date of trial she had severe headaches, pains in the lower back, and pains in the right knee which increased when she walked. She stated that her left eyelid drooped more after the accident than it had before. She demonstrated to the jury the permanent scars to her face. Dr. Terrell who was also the treating physician for Janice Huizenga stated she suffered from multiple lacerations of the face, scalp, and knee, which necessitated the placement of 50 stitches of the face and scalp and 10 stitches to the knee. There were contusions and an internal injury to the right knee, and complaints of pain in the lower back. Dr. Terrell examined Miss Huizenga's face at trial and stated that he found several scars on the

left side of her face and a broad based scar on the left forehead near the hairline.

Dr. Benjamin Kessert testified as an expert on behalf of Miss Huizenga. He conducted an objective examination of the patient and found scars on the face and spasms on the lower back. In his opinion, the objective conditions were permanent. In answer to a hypothetical question, the doctor was of the opinion that there was a causal situation between the conditions of ill being of the hypothetical person and the accident in January of 1964. He further said that this hypothetical person's unconsciousness indicated a cerebral concussion which is a competent cause of headaches. In his opinion, there is a relationship between the concussion and the headaches. He also stated the spasms of the lower back were a competent cause of back pain.

According to the testimony, Janice Huizenga's face was permanently scarred and for a period of five years she was subject to headaches, pains in the lower back, and pains in her right knee. There is evidence which indicates that these conditions were caused by the accident and that they will continue into the future. Even though Miss Huizenga's monetary loss was relatively small in relation to the verdict, we cannot say in view of the testimony concerning her medical condition that the verdict was so excessive as to demonstrate that the jury was swayed by passion and prejudice.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.