THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW LEE WILBERT, a/k/a LEE JAY (Impleaded), Defendant-Appellant.

(No. 55749;

First District (4th Division)—November 14, 1973.

Edward M. Genson, of Chicago (James J. Cutrone, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Douglas Cannon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

The defendant-appellant was charged with murder, attempted murder, and aggravated battery and was found guilty of aggravated battery. He was sentenced to from one to five years imprisonment and in this appeal maintains that the State failed to prove his guilt beyond a reasonable doubt. In addition defendant maintains he was prejudiced by references made to alleged other crimes, to his alleged street gang membership and to the family of the victim of the fatal shooting, Bertha Gurley. We find no merit in these contentions.

The evidence in this case was lengthy but centers on the testimony

of four occurrence witnesses. Since the defendant was convicted of the aggravated battery charge alone, we shall consider the evidence only as it pertains to this offense. The shootings involved in this case occurred on July 4, 1969, in a breezeway that runs underneath a public housing project at 1160 North Sedgwick in the city of Chicago. The victim of the aggravated battery was Kenneth Elders. Miss Bertha Gurley was shot and killed.

Mr. Elders testified on behalf of the prosecution and stated that on July 4, 1969, he was a member of the Black P. Stone Nation. At approximately 10:30 or 11:00 o'clock on that morning he was in the Gurley residence located on the 18th floor of the apartment building at 1160 North Sedgwick. At this time Elders left the Gurley apartment and was joined downstairs by Nathaniel Ragsdale, Lucious Dobbs and a fellow called "Little June", Elders and his companions encountered the defendant and about four other men. Mr. Elders stated he later found out that one of the men with the defendant was Stephen Carroll. According to Mr. Elders' testimony he was not armed but Dennis Ragsdale was carrying a knife and the defendant and Stephen Carroll were carrying revolvers. Mr. Elders testified that the defendant stated to him that the Stones had killed his (the defendant's) cousin, Stanley Morgan, and that they were going over to 1161 N. Larrabee. At this time the defendant had his gun out and it was down at his side. Elders stated that as they proceeded over to 1161 N. Larrabee, Lucious Dobbs ran and the defendant fired two shots at Dobbs but missed him. The rest of the group proceeded toward the Larrabee address and then Elders saw a police car approaching and he ran. Mr. Elders stated that the next time he saw the defendant was on the evening of July 4, 1969.

At approximately 9:00 P.M., on that evening Elders was again in the Gurley apartment and left about 9:15. He proceeded to the first floor breezeway of 1160 N. Sedgwick and when he arrived in the area, Elders stated that Bertha Gurley and Diane Ragsdale were there and were sitting midway on a railing located in the breezeway. Elders went over to the railing and got ready to sit upon it. Elders testified that as he was getting upon the railing he was grabbed by the collar and pulled forward by the defendant and that the defendant said to him, "you ran this morning".

According to Elders, the defendant then fired two shots at him and Elders was wounded in the groin area and creased in the leg. Elders stated he had no weapon on his person or in his hand.

After the shooting, Elders ran out of the east side of the building and stated that as he was running he heard more shots. Elders testified that he did not know at whom the shots were fired. Elders proceeded to a

gas station in the area and the police were there. He stated the police took him to Henrotin Hospital where he was treated for a half hour for his wounds. After being released from the hospital, Elders testified he was taken to the Chicago Avenue Police Station and that he gave a signed statement to the police.

On cross-examination Mr. Elders admitted that he was then serving a penitentiary sentence of from one to five years for robbery and that he had previously been convicted for possession of a concealed weapon. Defense counsel asked Mr. Elders where he had spent the night before the shooting and he replied at his house on the south side. However, it was shown that Mr. Elders' grand jury testimony was that he had spent the night prior to the shooting at the apartment building at 1160 N. Sedgwick. When confronted with this apparent inconsistency and asked whether or not he had given that testimony at the grand jury hearing, Mr. Elders replied, "I don't recall". During cross-examination defense counsel made reference to the statement Mr. Elders gave to the police on the night of the shooting. In that statement Mr. Elders said, "As I was coming down the stairs a fellow came up to me and said, 'You ran this morning' and then he started shooting." When asked whether he had been asked that question and had he given that answer, Elders replied, "The question wasn't put into that detail." However, when defense counsel again asked whether he had given that answer, Elders stated, "Yes".

Mr. Elders was also asked by defense counsel what the defendant was wearing on the evening of the shooting and he said, "I think he had on a gold jacket. I didn't look at his trousers." Defense counsel again confronted Elders with the statement he gave to the police and in which he had stated the defendant was wearing a green jacket at the time of the shooting. However, Mr. Elders reaffirmed his testimony that the jacket was gold and pointed out that the statement had been signed by two people. In the defendant's presentation of his case, the detective who took the statement testified that when he asked the question pertaining to the defendant's clothing it was Elders who responded. It should be noted that during cross-examination Mr. Elders was asked, "What did you do when he grabbed you?", and he responded, "I looked up into his face."

The next witness the State called was Diane Ragsdale who testified that on July 4, 1969, she lived at 1160 N. Sedgwick. At approximately 9:00 or 9:30 P.M., on the evening of July 4, 1969, she was in the breezeway of her apartment building and sitting on the railing located there. She testified that she was in the breezeway prior to the time Elders arrived and that from the time she first saw Elders until the defendant entered the breezeway a few minutes passed. Miss Ragsdale stated

that when she first saw the defendant, Elders was leaning next to her on the rail. According to Miss Ragsdale, the defendant walked up to the breezeway, grabbed Elders by the collar, and put a gun at Elders' side. She stated that the defendant and Elders began struggling but Elders did not have any kind of weapon. Miss Ragsdale testified she heard noises from the gun the defendant had and that she heard the gun go off and the other boy fired. She then saw Mr. Elders run out of the building. On cross-examination Miss Ragsdale stated, "I said Elders had been shot in the side, but they were struggling with the gun. And both guns went off. The other boy's gun went off." Defense counsel then asked Miss Ragsdale, "Well, you don't know who shot Elders in the side then?", and she answered "No".

The State produced two other occurrence witnesses but their testimony is not germane to the aggravated battery conviction. Rita Dolores Watkins testified that she was sitting on some stairs in the breezeway on the evening of July 4, 1969, but had her back to the railing. She heard some people arguing, but did not know who the people were. She stated that she heard some noises like firecrackers and then turned around and saw Elders running out of the building. Ella Mae Sims also testified that she was in the breezeway on that evening and that she heard Elders and another boy arguing. She stated she heard gunshots and then saw Elders run from the building. However, she did not give any testimony as to who shot Elders.

Stephen Carroll testified on behalf of the defendant and stated that on the evening of July 4, 1969, he accompanied the defendant to the apartment building at 1160 N. Sedgwick. Upon entering the building, Carroll stated that Kenneth Elders confronted the defendant and Elders went up under his shirt and had a gun. According to Carroll, the defendant grabbed Elders' hand and they began struggling. The gun went off and Elders ran from the building. Mr. Carroll stated he did not see the defendant with a gun.

The defendant testified on his own behalf and stated that when he and Carroll entered the breezeway Elders jumped down off the railing and started toward them. The defendant testified that Elders pulled a gun and that he grabbed it. They began to tussle and the gun went off. Elders then ran from the building. There was no further evidence as to whether or not it was the defendant who shot and killed Bertha Gurley, but as previously stated since the jury found the defendant not guilty of the murder charge we see no reason to discuss this evidence.

■ ■ The first contention of the defendant is that the State failed to prove him guilty beyond a reasonable doubt. Defendant's basis for this contention is that the testimony of the State's witnesses who had knowl-

edge of the Elders shooting, Mr. Elders and Diane Ragsdale, was contradictory and impeached to such an extent as to become incredible. This argument is essentially an attack on the credibility of two of the State's occurrence witnesses. The rule of law applicable to such an argument was well stated in *People v. Johnson* (1969), 112 Ill.App.2d 148, 153, 251 N.E.2d 393, 395:

> "It is the province of a jury to determine the credibility of witnesses and the weight to be given their testimony. A jury's verdict will not be disturbed unless contrary to the evidence or so unreasonable, improbable or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt."

In *People v. Ruel* (1970), 120 Ill.App.2d 374, 380, 256 N.E.2d 672, 675-676, the function of a court of review was delineated when conflicting evidence is presented:

> "* * * [I]t is well established that it is within the province of the jury to weigh the evidence, determine the credibility of witnesses, and the guilt or innocence of the accused; and where such evidence is in conflict, the reviewing court will not substitute its judgment for that of the jury, where evidence offered by the People, is sufficient, if believed by the jury, to establish the guilt of the accused beyond a reasonable doubt. *People v. Goodpaster*, 35 Ill.2d 478, 480, 221 N.E.2d 251 (1966), cert. denied, 386 U.S. 967 (1966)."

The evidence in this case was definitely conflicting and therefore it was incumbent upon this court to review the evidence in order to ascertain whether the State proved the defendant guilty beyond a reasonable doubt. Howver, as stated in *Ruel*, this court cannot substitute its judgment for that of the jury because conflicts in testimony raise factual issues which are properly within the province of the jury. It is the salient function of the jurors to weigh the evidence and resolve any conflicts existing in the testimony. It is our opinion that the State met its burden of proof.

■■ The testimony of Kenneth Elders standing alone was sufficient to prove the defendant guilty beyond a reasonable doubt. It cannot be gainsaid that in certain respects his testimony was contradictory, inconsistent and impeached. However, the most significant aspect of Elders' testimony was that it was unfaultering. Elders never waivered from his identification of the accused as the one who shot him. This identification was not effectively impeached and went unshaken on cross-examination. "Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. (*People*

*v. Fiorita,* 339 Ill. 78; *People v. Kidd,* 410 Ill. 271.)" (*People v. Gardner* (1966), 35 Ill.2d 564, 571, 221 N.E.2d 232, 236.) This was not the situation in the case at bar. There was testimony that the breezeway was well lighted and that Elders had encountered the defendant earlier on the day of the shooting. In addition on cross-examination Elders stated he looked into the face of the defendant immediately prior to the gun going off. The identification by Elders of the defendant was not doubtful, vague or uncertain. As stated in *People v. Guido* (1962), 25 Ill.2d 204, 208-209, 184 N.E.2d 858, 860:

> "* * * [I]t has been repeatedly held that the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict even though it is contradicted by the accused. (*People v. Pride,* 16 Ill.2d 82; *People v. Renallo,* 410 Ill. 372.)"

██ As previously stated the defendant argues that the State's version of the shooting was so contradicted as to become incredible. However, we are reminded of this very court's statement in the case of *Reed v. Knol* (1972), 7 Ill.App.3d 163, 166, 287 N.E.2d 238, 240:

> "Inconsistencies and contradictions which exist in the testimony of a witness should be considered by the trier of fact in determining the weight to be given to a witness's testimony. The existence of contradictions and inconsistencies by themselves do not necessarily destroy the credibility of a witness as a matter of law. As the Supreme Court stated in *Guthrie v. Van Hyfte,* 36 Ill.2d 252, at 258, 222 N.E.2d 492, at 495, 'The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies.'"

As in *Reed* the jury in the instant case heard all the testimony and was cognizant of the prior inconsistent statements and impeachment of Elders. The jury weighed the evidence and resolved the conflicts in the testimony against the defendant. After a perusal of the lengthy record in this case, this court cannot substitute its judgment for that of the jury since the positive and unwaivering identification of the defendant by Elders was sufficient to convict the defendant. The jury was in a better position to determine Elders' credibility and we cannot say that its judgment was so unreasonable as to raise a reasonable doubt as to defendant's guilt. Since we are of the opinion that the testimony of Elders was sufficient to convict the defendant, we deem it unnecessary to discuss the testimony of Dianne Ragsdale.

██ As an adjunct to the defendant's argument that the State failed to prove him guilty beyond a reasonable doubt, he contends the jury's

determination that he was guilty of aggravated battery but not murder constitutes a compromise verdict. Defendant also contends that the weakness of the State's case was evidenced by the jury's failure to convict him of attempted murder. We do not agree. In *People v. Sanders* (1972), 6 Ill.App.3d 820, 286 N.E.2d 785, the defendant was charged with murder, attempted murder and armed robbery. However, the defendant in that case was found guilty of only armed robbery. The court stated at 826 to 827:

"The fact that the jury found the defendant not guilty on the murder and the attempt murder charges of the indictment, whereas he was found guilty of the armed robbery charge, does not indicate a compromise verdict. On the contrary, the verdict was legally consistent, although not logically so; the crimes charged in the indictment were composed of different elements, although they arose out of the same set of facts."

Similarly, in the case at bar, a finding of guilty on the aggravated battery charge but not on the murder or attempted murder charges does not show a compromise verdict. Each of these offenses is likewise composed of different elements.

There was evidence in this case that Bertha Gurley may have been killed by the defendant, Stephen Carroll, or a group of youths outside the apartment building. In determining that the evidence was insufficient to support the charge of murder but adequate to convict for aggravated battery, the jury was well within its province. The record sustains the jury's verdict and does not raise the suspicion of a compromise.

██ In order to convict the defendant of the charge of attempted murder the jury would have had to find that the defendant had the intent to commit murder and that he committed an act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1969, ch. 38, par. 8—4.) The requisite mental state for murder is an intent to kill or do great bodily harm while that needed for aggravated battery is intentionally or knowingly causing great bodily harm, or permanent disability or disfigurement. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1 and 12—4.) Since the two offenses are composed of different elements it was not inconsistent for the jury to return a verdict of not guilty for attempted murder but guilty for aggravated battery. It was not improper for the jury to find that the defendant shot Elders and was guilty of aggravated battery, but that he did not do so with an intent to kill. This action of the jury does not evidence any weakness in the State's case.

The defendant also contends that the trial court committed reversible error when it allowed the State to introduce evidence as to the first

encounter between Elders and the defendant on the morning of July 4, 1969. The defendant argues that such evidence showed he was guilty of aggravated kidnapping and attempted aggravated battery and was therefore irrelevant and prejudicial. Without deciding whether or not the evidence proved other alleged offenses, we find no merit in the defendant's contention. It should be noted that the State in reply to this argument stated that since no objection to this evidence was made in the trial court, the question was not properly presented for appeal. However, as previously alluded to, we have carefully reviewed the record in this case and find that defense counsel did object to this evidence on the ground that it was irrelevant and was overruled. Therefore, the issue is properly before this court.

■■■ The general rule was stated in *People v. Donaldson* (1956), 8 Ill.2d 510, 517, 134 N.E.2d 776, 779, "Evidence which tends to show that an accused has committed crimes or acts of misconduct which are distinct and entirely unrelated to the one for which he is being tried is both incompetent and prejudicial [Citations omitted.] \* \* \*." However, this general rule is not without exception and under certain circumstances evidence of other crimes is admissible. As stated in *People v. Cage* (1966), 34 Ill.2d 530, 533, 216 N.E.2d 805, 806-807:

> "The general rule, of course, is that evidence of commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission. (*People v. Tranowski*, 20 Ill.2d 11, 16 and cases there cited.)"

It was also stated in *People v. Robinson* (1968), 98 Ill.App.2d 285, 289, 240 N.E.2d 397, 399, that:

> "It is only where the commission of another offense has no connection with or relation to the prosecution of the crime charged and only creates a prejudice against defendant, that its proof renders the trial unfair." [Citation omitted.]

We cannot conclude that the events which occurred on the morning of July 4, 1969, bear no relation to the shooting of Elders later that evening. While the testimony concerning this earlier altercation between the defendant and Elders was conflicting as to who provoked it and what occurred, the evidence was still relevant to the crime charged. Without this evidence, as the State contends in its brief, the shooting of Elders would appear to have occurred in a vacuum. The evidence as to the events which occurred in the morning was relevant and necessary in order to put the altercation that ensued later that evening in the

proper context. Elders did testify that the defendant stated to him that the Stones had killed his cousin, Stanley Morgan. Even though other evidence showed that Stanley Morgan was not the defendant's cousin but rather was Stephen Carroll's cousin, we are still of the opinion that the evidence of the events that took place on the morning of July 4, 1969, tended to show motive or design. This evidence was connected and related to the charge of aggravated battery and the trial court committed no error in admitting it.

■■ The defendant's next contention is that the trial court committed error when it allowed the State to introduce evidence that the defendant and Stephen Carroll were members of a street gang. Defendant argues that such evidence had no relevance to the offense charged and was extremely prejudicial. The rule as to the admissibility of gang membership was adequately set forth in *People v. Hairston* (1970), 46 Ill.2d 348, 372, 263 N.E.2d 840, 854:

> "To prevent the conviction of one accused of a crime merely because of his membership in an organization that is unpopular, * * * proof of membership is admissible only if there is also sufficient proof to show that membership is related to the crime charged, for example, to show common design or purpose."

There is no direct evidence that the shooting of Kenneth Elders was related to any feud between rival street gangs nor in any other manner related to gang activity. However, due to the doctrine of curative admissibility the trial court did not err in permitting the State to show the gang membership of the defendant and Stephen Carroll.

The doctrine of curative admissibility allows evidence which is otherwise inadmissible to be presented because similar evidence has been introduced by the adverse party. As stated in I Wigmore on Evidence, § 15: "On this subject three different rules are found competing for recognition in the different jurisdictions." In Illinois, however, there are cases supporting each of the three rules on curative admissibility. The first rule as stated by Wigmore is that "Admission of an inadmissible fact, without objection by the opponent, does not justify the opponent in rebutting by other inadmissible facts." (*Wickenkamp v. Wickenkamp*, 77 Ill. 92; *Maxwell v. Durkin*, 185 Ill. 546; *People v. Newman*, 261 Ill. 11; *Levinson v. Fidelity and Casualty Co. of New York*, 348 Ill. 495.) Another concept of the doctrine allows the opponent to resort to similar inadmissible evidence. (*Jones v. Sanitary District of Chicago*, 265 Ill. 98; *Bogart v. Brazee*, 331 Ill. 160.) The third theory on curative admissibility is that an opponent may reply with similar evidence if it is needed to eradicate an unfair prejudice which might ensue from the original evidence. (*Chicago City Ry. Co. v. Bundy*, 210 Ill. 39; *Mash v. People*,

220 Ill. 86.) The ruling of the trial court in the case at bar more closely approximates the third theory on curative admissibility than the other two rules.

During the direct examination of Kenneth Elders in the State's case in chief it was brought out that he was a high ranking official in the street gang known as the Black P. Stone Nation. The State in its direct examination of Elders also endeavored to show that an apartment building located at 1161 N. Larrabee was a hangout for another street gang known as the "Blacks". Defense counsel interposed an objection and the trial court sustained it. The jury was instructed to disregard Elders' testimony that 1161 N. Larrabee was a hangout for the "Blacks". At this time the State made an offer of proof and alleged that part of its case was based on the fact that the "Blacks" and the Black P. Stone Nation were rival gangs. The State contended that one of the motives in the case was that the two groups were rivals. This contention was based in part on the defendant's statement to Elders that the Stones had killed the defendant's cousin, Stanley Morgan. The trial court ruled that all this showed was hostility towards the Rangers and that it did not show anything about another gang, the "Blacks". The State thereupon withdrew its question. Despite this ruling of the trial court concerning the showing of rival gangs, the defense counsel repeatedly cross-examined all of the State's witnesses concerning gang membership and gang related matters. In most instances the State did not object to these questions.

When the defense presented its case, the State was permitted over defense counsel's objection to question Stephen Carroll about his membership in the "Blacks". Carroll stated he had never belonged to the group. During cross-examination of the defendant, the State was permitted once again over objection to question him as to his membership in the "Blacks". The defendant denied being affiliated with this group. The State's Attorney then asked the defendant whether or not he knew of an organization called the "Deuces Wild". Defense counsel objected on the ground of relevancy, the objection was sustained, and the State made an offer of proof. During the offer of proof and in response to defense counsel's argument that there was no evidence that the offenses charged were at all motivated by any gang organization known as the "Blacks", the State's Attorney answered, "Then what is the purpose in his questions about Blackstone Rangers and Stone City? This would be bias and prejudice to me." The trial court answered that this was the reason it was allowing the State to go into the question of the "Blacks".

In rebuttal the State called Officer Kellum Macritchie who was a member of the Chicago Police Department's gang intelligence unit. Before Officer Macritchie began to testify defense counsel asked for a side bar

conference. During this conference the trial court ruled it would allow the officer to testify as to the gang membership of Stephen Carroll and the defendant "to show the affinity between the parties." However, the court ruled it would not allow the officer to go into any details of a gang war because there had been no direct evidence of any gang feud. Officer Macritchie then stated that the defendant and Stephen Carroll were members of a street gang known as the "Blacks".

■■ The trial court did not err in allowing the State to show the defendant's street gang affiliation. The record is replete with questions by defense counsel directed to all of the State's occurrence witnesses as to their gang membership, other gang related matters and whether or not the apartment building at 1160 N. Sedgwick was controlled by the Blackstone Rangers and known as "Stone City". It is our opinion that in proceeding in this manner defense counsel opened the door for the State to introduce evidence as to the defendant's gang membership. Under these circumstances the otherwise inadmissible evidence as to the defendant's gang membership was needed to eradicate an unfair prejudice which might otherwise have ensued from the defense counsel's questions. As stated previously, there are cases in Illinois which support each of the three rules on curative admissibility. There does not seem to be a definitive statement from our Supreme Court on this subject but we agree with the statement of the Supreme Court of Pennsylvania in *Western Show Co. v. Mix* (1934), 315 Pa. 139, 142, 173 A. 183, 184-185:

> "The second question alleged to be involved is this: 'If irrelevant and collateral matter is elicited, * , * * without objection, from plaintiff's witness on cross-examination, can this plaintiff rebut such collateral matter by the testimony of other witnesses?' Appellant can hardly be heard to raise this question. The injection by it of the irrelevant and collateral matter into the case left plaintiff but a single choice; it had either to offer no evidence in answer to it, and thereby risk its possible effect on the jury, which it had no way of measuring; or it could offer the rebutting evidence and take the risk of a reversal because of the doctrine now advanced by appellant. No court of justice should put a litigant to such an alternative; rather it should permit him, by means of the contradictory evidence he had on hand, to rebut, as far as he could, the erroneous evidence elicited by his antagonist. Anything short of this would not even savor of fairness."

Although the *Mix* case was a civil proceeding, there is no reason why the court's reasoning there should not be applied to a criminal case. It was the defendant's counsel who injected the irrelevant and collateral matter

into the trial. Under the circumstances of this case applying the rule of curative admissibility which allows an opponent to introduce similar evidence in order to combat any prejudice which may ensue from the original evidence was the better way to proceed. The trial court was extremely careful to limit the evidence to the defendant's gang membership and did not allow any details to come before the jury. We cannot say the trial court erred nor that the defendant was prejudiced by the admission of this evidence.

■■ The final contention of the defendant is that the State's references to the family of the victim of the fatal shooting were irrelevant and prejudicial. In the case of *People v. Dukes* (1957), 12 Ill.2d 334, 340, 146 N.E.2d 14, 17, the court stated the rule of law as to testimony about a victim's family in a murder case. "Where it is not elicited incidentally, but is presented in such manner as to cause the jury to understand that it is a matter material and proper to be proved, its admission is prejudicial error. (*Filippo v. People*, 224 Ill. 212.)" While we are of the opinion that this was not the situation present in the case at bar, we deem it unnecessary to consider the issue any further due to the fact that the defendant was found not guilty of the murder charge. The defendant argues that the thrust of the cases which disallow such evidence is that the jury should not be distracted from the true issues in the case. We agree with this but the verdict of the jury clearly shows it was not distracted from the true issues. The not guilty verdict on the murder charge shows that the jury was not prejudiced by such evidence against the defendant.

For the reasons herein stated, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.