THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOUIS MALONE *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 59408, 60212 cons.

Opinion filed March 24, 1976.

James J. Doherty, Public Defender, of Chicago (William D. Trude and Edmund B. Moran, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Frances T. Norek, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, the defendants were found guilty of attempt murder and aggravated assault, and not guilty of two counts of aggravated battery. They were sentenced to 1 year for aggravated assault and from 4 to

12 years for attempt murder with the sentences running concurrently. Defendants appeal and raise the following issues for review: (1) whether the defendants' convictions for attempt murder must be reversed since it is legally inconsistent with the verdict of not guilty of one count of aggravated battery; (2) whether the court committed prejudicial error by failing to give a jury instruction which included a statement that Willie C. Moore was the alleged victim of the attempt murder charge; (3) whether the defendants were denied a fair trial when the prosecutor engaged in a course of conduct seemingly intended to prejudice the jury against them; (3a) whether the defendants were denied a fair trial when the State's Attorney improperly attempted to make membership in the Disciples street gang a major issue in the case; (3b) whether Malone was denied a fair trial when the State's Attorney brought out the fact that the defendant had been arrested subsequent to his arrest in the case at bar; (3c) whether the defendants were denied a fair trial when the State's Attorney cross-examined both defendants about Ennis Chaney's (a friend) incarceration in the county jail; (3d) whether the defendants were denied a fair trial when the State's Attorney's closing argument concentrated on matters not in evidence which appealed to the guilts of the defendants and sympathies of the jury; (3e) whether the defendants were denied a fair trial when the State's Attorney misstated evidence in closing argument in an apparent attempt to corroborate a State witness' testimony; and (4) whether the defendants were proved guilty beyond a reasonable doubt of attempt murder and aggravated assault.

The State's first witness, Willie Moore, testified that on the afternoon of April 10, 1972, he was playing basketball with Dennis Kent, Steve Jones and some other friends when Louis Malone approached the group with his hands in his coat. As the defendant walked closer to the group, they dispersed and ran into a building but returned to the basketball court when Malone left the area. The group continued playing basketball until approximately 6:30 p.m. when Malone reappeared with Dyson and an unknown man. The defendants walked to the basketball court, shouted "D-Love," which is another way of referring to a street gang, and Dyson fired two shots at the group as they ran to the passageway, wounding Moore. The witness testified that he was shot in the right leg so Steve Jones and Dennis Kent picked him up and carried him to a paddy wagon a half block away. Moore was then taken to Henrotin Hospital and a bullet was removed from his leg.

The next two witnesses, Dennis Kent and Steve Jones, corroborated Moore's testimony. However, Jones testified that he went to the 1160 building and reported the shooting to Officer Kelly, after he placed Moore in the paddy wagon. Jones stated that Officer Kelly immediately pro-

ceeded to the building exit after receiving the report. When he arrived at the exit, the officer observed the defendants and ordered them to stop, but they refused to obey the order and Malone fired two shots at the officer. It was at this time that the officer took out his gun and returned the fire and attempted to apprehend the defendants. Officer Kelly chased them and the witness testified that he lost sight of the parties as they fled from the scene.

Officer Kelly corroborated Jones' testimony, stating that he conducted an investigation after being told that a man had been shot. While leaving the 1150 Sedgwick building, he was fired on by the defendants. The officer announced his office, fired two shots at the defendants and attempted to apprehend the assailants as they ran across a baseball field. Continuing the chase, he lost them when they entered a crowd that gathered outside the 1117 Cleveland building.

The State's final witness, Officer Roper, testified that he conducted a search for the defendants after talking with Dennis Kent and Ronald Alexander at Henrotin Hospital. Officer Roper toured the area that Dyson and Malone were known to frequent and spotted them in front of the 1017 Larrabee building at about 7:35 p.m. The defendants were searched, arrested, and placed in the squad car and taken to the 18th district police station.

The State rested its case and the defense called Officer Paul Roppell who testified that he was assigned to investigate the Moore shooting at 7 p.m. on April 10, 1972. The officer proceeded to Henrotin Hospital where he interviewed Moore, but the complainant was unable to tell the officer who shot him.

Thomasina Anderson, William Dyson's mother, was called as the next defense witness. She testified that her son, Patty Washington and Henrietta Bates were on their way to Jack's Community Market at 6:20 p.m. on the evening of April 10, 1972, and they were gone for about 20 minutes. Although Dyson never returned to the apartment, his companions, the two women, returned about 7 p.m.

Patty Washington, Dyson's sister, corroborated her mother's testimony and testified that after returning from the store with Henrietta and Dyson, she took the groceries to her mother and returned to her brother's car. The trio proceeded to Doradeen Cross' apartment and after arriving there Patty and Henrietta went up to the apartment and Dyson remained downstairs. While in the apartment, Patty testified that she witnessed a beating from the apartment window and after talking for about 30 minutes, she returned to her mother's house with her brother and Louis Malone. The next witness, Henrietta Bates, corroborated the testimony of Mrs. Anderson and Patty Washington.

William Dyson took the stand and testified that he went to the store with his sister and Henrietta Bates at about 6:10 p.m. on the evening of April 10, 1972. After shopping for about 20 minutes, he returned to his mother's house to drop off the groceries. Then he drove his car to Doradeen's apartment and, while Patty and Henrietta went upstairs, he remained downstairs because he was angry with Henrietta. After stopping in the hallway to shoot dice, he joined his sister and Henrietta at Doradeen's apartment and 10 minutes later Malone stopped by her apartment. Dyson then left Doradeen's apartment with Patty and Malone, dropped his sister off, and parked his car. Then he and Malone proceeded to look for Ennis Chaney, but before the defendants found him, they were arrested.

Dyson testified that Moore, Kent, and Jones had been witnesses against him because he was a State witness against a friend of theirs, Johnny Veal. Finally, the witness stated that he thought he was disliked because he refused to join the P Stone Nation at the suggestion of Jones and Kent.

Louis Malone, the last defense witness, testified that he took his daughter to his mother's house at about 6 p.m. on April 10, 1972, and proceeded to Doradeen's apartment. When he arrived at her building, he watched the police push a friend into a hallway; he went to Doradeen's apartment, stayed for 10 minutes and left with Patty and Dyson. After dropping Patty off, the witness stated that he and Dyson were arrested while en route to visit a friend.

The defendants' first contention is that their convictions for attempt murder should be reversed because they are legally inconsistent with the not guilty verdict on the aggravated battery count. They submit that the crimes of aggravated battery and attempt murder are composed of the same elements; therefore, the verdicts must be the same. *People v. Hairston* (1970), 46 Ill.2d 348, 263 N.E.2d 840, and *People v. Dawson* (1974), 19 Ill. App. 3d 150, 310 N.E.2d 800, are relied on as authority.

The threshold question to be resolved is whether the verdicts were legally inconsistent. In *Hairston*, the court considered this question and, quoting from *State v. Baird* (1939), 200 Wash. 227, 93 P.2d 409, stated at 362:

> " 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.' " (See also Annot., 18 A.L.R. 3d 259, 291-92 (1968).)

In *Dawson*, this court applied the *Hairston* rule and reversed the conviction. In that case, the defendant was found guilty of the forcible felony, armed robbery, but he was acquitted of felony murder. Since a person is guilty of felony murder only when an individual is killed during the com-

mission of a forcible felony, it is legally and logically inconsistent, as the court found, to be convicted of armed robbery, the crime giving rise to the murder, but acquitted of felony murder when the two offenses in the law constitute one offense.

■■ In the instant case, an examination of the aggravated battery[1] (Ill. Rev. Stat. 1971, ch. 38, §12—4(b)(1)), attempt[2] (Ill. Rev. Stat. 1971, ch. 38, §8—4(a)), and murder[3] (Ill. Rev. Stat. 1971, ch. 38, §9—1), statutes clearly reveals that the elements of the offenses are different. So, even though there may be some logical inconsistency in verdicts of acquittal and conviction of crimes arising from the same transaction, we found the verdicts in this case to be legally consistent. Since logical consistency in verdicts is not required where verdicts are legally consistent (see *People v. Hairston* (1970), 46 Ill.2d 348, 362, 263 N.E.2d 840), and since the trend is to convict only of the greater or more serious offense (*People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1), herein attempt murder, where two charges are based on the same course of conduct, defendants' argument for reversal is without merit. We conclude that the acquittals do not affect the convictions and that neither legal nor logical consistency of verdicts is now required in Illinois. *People v. Murray* (1975), 34 Ill. App. 3d 521, 340 N.E.2d 186.

The defendants' next contention is that the court erred by failing to give a jury instruction that specified that Willie Moore was the alleged victim of the attempt murder. Defendants complain about instruction 11, IPI No. 6.05, which defined attempt, instruction 12, IPI No. 6.07, which delineated the elements of an attempt charge, and instruction 13, IPI No. 7.01,

---

[1] "§12—4. Aggravated Battery (a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery and shall be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 10 years.
(b) A person who, in committing a battery either:
(1) Uses a deadly weapon; ° ° °."

[2] "§8—4. Attempt
(a) Elements of the Offense.
A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

[3] "§9—1. Murder
(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
(3) He is attempting or committing a forcible felony other than voluntary manslaughter."

which defined murder. We note that this argument is made even though the defendants did not file objections to any of the instructions and did not submit instructions themselves.

■■ In Illinois, since the adoption of Supreme Court 451(a) (uniform instructions in criminal cases), it is now the rule that the approved uniform instructions shall be used and modified only where the facts make the uniform instruction inadequate. (*People v. Phillips* (1970), 129 Ill. App. 2d 455, 263 N.E.2d 353.) Here we do not think that the facts made the instructions inadequate since they gave due consideration to the facts and governing law. Although it is true, as defendants point out, that the trial judge has a duty to instruct the jury as to the elements of the offense (*People v. Castro* (1971), 1 Ill. App. 3d 537, 274 N.E.2d 839; *People v. Lewis* (1969), 112 Ill. App. 2d 1, 250 N.E.2d 812; *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63), the name of the victim is not an element of the offense nor is there a place for the victim's name in the Illinois Pattern Jury Instructions. We think the jury understood that Willie Moore and not Officer Kelly was the victim of the attempt murder and, therefore, see no reason why this case should be reversed on this ground.

■■ Next, the defendants contend that they were denied a fair trial when the prosecutor engaged in a course of conduct designed to prejudice the jury against them. Defendants submit that they were prejudiced when the court permitted the State to introduce evidence of their membership in the Disciples gang when there was no proof that the organization had any relationship to the crime charged. The question of whether to admit testimony of gang membership has been presented to our courts on numerous occasions. (*People v. Hairston* (1970), 46 Ill.2d 348, 263 N.E.2d 840; *People v. Wilbert* (1973), 15 Ill. App. 3d 974, 305 N.E.2d 173; *People v. McMurray* (1972), 6 Ill. App. 3d 129, 285 N.E.2d 242.) In *People v. Hairston* (1970), 46 Ill.2d 348, 263 N.E.2d 840, when our Supreme Court was faced with this question, the court held that evidence of membership is admissible if the facts and circumstances demonstrate that there is a common design to do an unlawful act to which the group assents. Likewise is *People v. Olivier* (1972), 3 Ill. App. 3d 872, 877, 279 N.E.2d 363, where this court held that testimony of gang membership was properly admitted into evidence. We think the testimonial evidence, statements by three State witnesses that the defendants shouted D-Love prior to the shooting and the defendants' own admissions that they were former gang members, if believed by a jury, was sufficient to support an inference that the defendants, as former gang members, were engaged in a course of conduct that had as its design and purpose to harm members of a rival gang. We think the evidence was relevant and admissible and it need not be excluded because it might also have a tendancy to prejudice the de-

fendants. *People v. Jackson* (1961), 22 Ill. App. 2d 382, 391, 176 N.E.2d 803; *People v. Hall* (1973), 11 Ill. App. 3d 670, 673, 297 N.E.2d 377.

Malone also argues that he was denied a fair trial when the State's Attorney elicited testimony during cross-examination that he had been arrested since his arrest for the crime in the instant case. In this way, defendant submits that the prosecutor introduced evidence of a subsequent arrest through implication which is improper under *People v. Herbert* (1935), 361 Ill. 64, 196 N.E.2d 821. We disagree with the defendant because we do not think evidence of a prior arrest for an unrelated crime was introduced directly or impliedly. Finally, defendant's argument that the purpose and effect of this question was to prejudice the jury is pure speculation and conjecture and we hold the defendant was not denied a fair trial.

■■ Defendants also argue that they were denied a fair trial when the State's Attorney cross-examined them and asked questions about Ennis Chaney's (a friend) incarceration. We reviewed the record and found the prosecutor's questions to be relevant and we do not think the defendants were prejudiced. Defendants also urge us to reverse because of the prosecutor's closing argument about the deplorable conditions in Cabrini Green housing project. We think the prosecutor's argument was based on the evidence and was not an attempt to appeal to the sympathies of the jurors or guilts of the defendants. (See *People v. Wilson* (1970), 131 Ill. App. 2d 731, 738, 264 N.E.2d 492.) Finally, defendants contend that the prosecutor misstated evidence in his closing argument to corroborate Steve Jones' testimony. This contention is not supported by the record.

■■ Defendants submit that their guilt was not established beyond a reasonable doubt. We disagree with this contention. The crime of attempt occurs when with the intent to commit the specific offense, herein murder, the accused does an act which constitutes a substantial step toward the commission of the offense. In the case at bar, three witnesses, Willie Moore, Dennis Kent, and Steve Jones, testified that the defendants walked to the basketball court, that they shouted D-Love, and that Dyson fired two shots wounding Moore. Moreover, Dennis Kent's description of the perpetrators' clothing was corroborated by Officer Kelly and by the arresting officer, Patrolman Roper. The evidence clearly established that the defendants were the perpetrators of the offense and when they shot Moore, they took a substantial step toward the commission of the crime of attempt murder. Although the defendants pointed out conflicts in the testimony and they argue that they were elsewhere when the crime was committed, the jury was not compelled to believe their alibi defenses. (*People v. Adams* (1972), 8 Ill. App. 3d 8, 12, 288 N.E.2d 894.) Consequently, we hold that their guilt was proved beyond a reasonable doubt.

■█ Defendants also argue that they were not proved guilty of aggravated assault beyond a reasonable doubt. A person commits an aggravated assault when his conduct places another in reasonable apprehension of receiving a battery and the person uses a deadly weapon or knows the individual assaulted to be a peace officer engaged in his official duties. The evidence revealed that the defendants fired two shots from a gun at Officer Kelly, after he had announced his office. We think the officer feared for his safety and that the defendants realized that he was a policeman engaged in the execution of his duties. Therefore, we hold that the crime of aggravated assault was established beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER and ADESKO, JJ., concur.