THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NATIVIDAD CALDERON, Defendant-Appellant.

First District (4th Division)    No. 80-531

Opinion filed July 16, 1981.

Ralph Ruebner and Richard E. Steck, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Nancy Lynn Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Natividad Calderon, was charged with the murder (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 9—1(a)(2)) of Paul Fontan. After a jury trial, defendant was found guilty and sentenced to 30-60 years in the Illinois Department of Corrections. He appeals, raising the following issues for review: (1) whether the trial court erred in permitting the prosecutor to cross-examine defense witnesses about affiliations with street gangs; (2) whether the trial court erred in giving the jury instructions on accountability when evidence showed defendant acted as a principal; and (3) whether the trial court erred in allowing an investigating officer to be called as a rebuttal witness and to testify that in his opinion the defendant belonged to a street gang.

We affirm.

At approximately 11:30 p.m. on July 14, 1977, Paul Fontan, Michael Souchet, Jose Miranda and Joseph Diaz left the Blessed Virgin Mary High

School yard (BVM) where they were playing basketball. Joseph Diaz testified that they walked to his home at 3412 Beach Street, Chicago, after the game. Joseph went inside to obtain money. Paul, Michael and Jose went through the gangway to the alley behind Joseph's house. Joseph testified that when he exited his house from the front door, he began walking west toward St. Louis Street. Joseph stated that he heard a group yell, "king love." The group was coming in his direction. Joseph testified that he ran toward some bushes on the southeast corner of Beach and St. Louis and hid in them.

Michael and Jose testified that they and the victim entered the alley behind Joseph's house and began walking west toward St. Louis Street. At St. Louis they turned south and began walking toward Beach Street. As they approached the corner of Beach and St. Louis, they heard a group yell, "king love." The group of about 10 to 15 individuals began to surround the three boys. The witnesses testified that they heard shots fired. Michael testified that he turned and saw defendant standing by a tree with a gun in his hand. Michael stated that he ran west on Beach Street. Paul, the victim, ran behind Michael. Jose testified that he ran south on St. Louis. Joseph, Michael and Jose testified that they saw defendant with a gun. Joseph and Jose testified that they saw defendant fire at Paul. After Paul fell, they saw defendant stand above him and fire more shots. The three occurrence witnesses identified defendant from police mug shots, in a lineup, and in court. Each testified that a bright street light on the corner enabled them to see the defendant.

On cross-examination each occurrence witness was asked the significance of the term, "king love." Joseph testified that the term signified the Latin Kings. Each was asked whether he was a member of the gang, the Imperial Gangsters. Each denied being a member.

Investigator Robert Guthrie of the gang crimes unit described the lineup and identification procedure. He testified that he had been in the gang crimes unit for 6 years.

In defendant's case in chief, Maria Melendez, common-law wife of defendant, Rosemary Calderon, mother of defendant, and the defendant testified. Defendant denied the shooting and gave as an alibi that he was at home with his wife and mother. On cross-examination Maria was asked whether she was a member of the Latin Queens. She denied being a member. She was further asked to identify photographs of friends of the defendant, some of whom she and defendant claimed to have been with the evening of July 14. She identified them and admitted that the friends were members of the Latin Kings gang. Defendant testified that he knew members of the Latin Kings and the Imperial Gangsters. He denied being a member of a gang.

In rebuttal, Investigator Guthrie was recalled. Guthrie testified to a

conversation with Maria Melendez which contradicted her in-court testimony. Guthrie further testified as to his investigative work in the gang crimes unit. He was asked, based on his knowledge and expertise, and his observations of defendant in the vicinity of Beach and Spaulding Avenue, whether defendant was a member of the Latin Kings. Guthrie responded affirmatively.

The defendant objected to jury instructions on accountability. The court decided to give the instructions because the evidence was that more than one person at the scene had a gun, and the testimony was that a number of shots were fired. The jury returned a verdict of guilty. Defendant's motion for a new trial was denied, and defendant was sentenced to 30-60 years. He appeals.

Defendant contends the prosecutor should not have been allowed to cross-examine defense witnesses about affiliations with street gangs. We do not agree. Proof of membership in a gang is admissible if there is also sufficient proof to show that membership is related to the crime charged, for example, to show common design or purpose. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840, 854.) Moreover, where defense counsel opens the door by inquiring into street gang affiliation, the State may introduce evidence as to defendant's gang membership under the doctrine of curative admissibility. *People v. Wilbert* (1973), 15 Ill. App. 3d 974, 984, 986, 305 N.E.2d 173, 179-80.

Three occurrence witnesses, Joseph Diaz, Michael Souchet and Jose Miranda testified that they heard a group yell, "king love." Each identified the defendant as the person who fired the gun toward Paul Fontan. None of the witnesses testified that the attack or shooting was gang related. On cross, the defense counsel asked what was the significance of the term, "king love." The defense counsel further asked each witness whether he was a member of the Imperial Gangsters. Defense counsel also attempted to show that there had been an encounter between some Latin Kings and the occurrence witnesses during the afternoon of July 14 at the BVM playground.

■■ Proof that the group who yelled, "king love" and subsequently attacked the witnesses were members of a gang would be relevant under the circumstances to show common design or purpose. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840, 854.) The State did not ask the witnesses to testify as to the meaning of "king love." The significance of the term was brought out by defense counsel. Thus, the defense injected the matter of gang membership into the case.

Defendant claims to have spent the evening with friends. He denied being in the area of Beach and St. Louis. He denied shooting the victim. He maintained that after returning from a swimming party in the suburbs, he went home and stayed there until he left to take his wife to the hospital.

Defendant claimed to know his friends only by their nicknames. He did not know their legal names or addresses. Maria Melendez was shown pictures of these friends. She identified them. The State elicited from her that the friends were members of the Latin Kings.

■■ Defendant contends that Guthrie is not qualified as an expert to give an opinion on the characteristics of gangs. We do not agree. Expert testimony is admissible when the subject matter of the inquiry is of such a character that only persons of skill and experience in it are capable of forming a correct judgment as to any facts connected therewith. (*People v. Lamprey* (1979), 79 Ill. App. 3d 1065, 1069, 398 N.E.2d 1076, 1079.) Guthrie had been an investigator with the gang crimes unit for 6 years. He had accumulated data about the organization of gangs, and he had observed gang related activity in the vicinity. The extent of Guthrie's experience was introduced at trial. The determination of whether a witness is qualified to testify as an expert lies within the discretion of the trial court. *Lamprey*, at 1070.

■■ Though there may be prejudice against street gangs in metropolitan areas (*People v. Parrott* (1976), 40 Ill. App. 3d 328, 331, 352 N.E.2d 299, 302), we think the evidence of defendant's affiliation with the Latin Kings was relevant and admissible; it need not be excluded because it might have a tendency to prejudice the defendant. *People v. Malone* (1976), 37 Ill. App. 3d 185, 191-92, 345 N.E.2d 801, 806.

■■ An accountability instruction is proper, even if the defendant might have been guilty of direct participation in the crime, if there was also sufficient evidence that he aided another in the commission of the crime. *People v. Stark* (1966), 33 Ill. 2d 616, 622, 213 N.E.2d 503, 506; *People v. Fulton* (1979), 68 Ill. App. 3d 915, 925, 386 N.E.2d 605, 613; *People v. Addison* (1977), 56 Ill. App.3d 92, 99, 371 N.E.2d 1025, 1030.

■■ The occurrence witnesses testified that several shots were fired by the group of 10 to 15 individuals who had run up to them and yelled, "king love." The witnesses further testified that they saw defendant with a gun. They saw defendant pursue the victim, and after the victim had fallen, defendant continued firing the gun. Though the evidence pointed to defendant as the principal perpetrator, there was evidence that another participant could have fired the shot that felled Paul Fontan. A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, or agrees or attempts to aid, such other person in the planning or commission of the offense. (*Fulton*, at 925, citing Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).) There was evidence in the record to justify the court's decision to give an accountability instruction.

■■ ■ Rebutting evidence is that which is produced by a plaintiff to

explain, repel, contradict or disprove the evidence given by the defendant. And, where the evidence offered in rebuttal is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal. *People v. Bell* (1927), 328 Ill. 446, 451, 159 N.E. 807, 809.

■■ In defendant's case in chief, Maria Melendez and Rosemary Calderon testified that the defendant was at home with them. Melendez also testified that the defendant accompanied her to the hospital. She said that they were in the emergency room until 5:30 a.m. July 15. Melendez was asked about a conversation she had with Officer Guthrie 5 days before she testified. Statements made in that conversation contradicted her in-court testimony. Moreover, the prosecutor claimed that he learned of the statement 2 days before Melendez testified. Melendez denied making the statements. Officer Guthrie was called in rebuttal. He testified that he had talked to Melendez on Wednesday, prior to her testifying on Monday. In that conversation she related to Guthrie an account of the evening of July 14 that differed from her in-court testimony. It is always competent to show, as a matter of impeachment, that a witness made a statement outside of court concerning material matters inconsistent with his testimony on the witness stand. *People v. Ladas* (1957), 12 Ill. 2d 290, 294, 146 N.E.2d 57, 59, citing *People v. Popovich* (1920), 295 Ill. 491, 495, 129 N.E. 161, 163.

■■ Defendant maintains that the State had a duty to disclose Guthrie's rebuttal testimony prior to Guthrie's taking the witness stand. The State maintains that the prior statement of Melendez was not known until 2 days before she testified. Melendez had not responded to subpoenas and had not been interviewed prior to trial. Thus, the State could not have decided to call Guthrie as a rebuttal witness until the alibi defense was presented by Melendez. (See *People v. Stinson* (1976), 37 Ill. App. 3d 229, 234, 345 N.E.2d 751, 755.) Moreover, the decision to allow rebuttal testimony is within the discretion of the trial court. Such a ruling will ordinarily not be set aside upon review. *People v. Lion* (1957), 10 Ill. 2d 208, 217, 139 N.E.2d 757, 762.

■■ ■ The requirement that a list of intended witnesses be furnished applies to all witnesses without reference to the time a party intends to call them whether in chief or in rebuttal. (*People v. Manley* (1974), 19 Ill. App. 3d 365, 371, 311 N.E.2d 593, 598.) But, as a practical matter, the relevancy of the testimony of the rebuttal witness and of his statement may not be known until the State is informed of the direction of defendant's case after response by the defendant to the State's discovery request. (*Manley*, at 371.) Officer Guthrie was listed as a witness for the State. Guthrie was called, and he testified about the identification procedure whereby the occurrence witnesses identified defendant from

photographs and a preindictment lineup. Guthrie was not asked during the prosecution case in chief whether in his opinion defendant was a member of the Latin Kings. The question was asked in rebuttal after defendant had testified that though he had friends who were affiliated with gangs, he was not a member of a gang. When a defendant takes the stand as a witness in his behalf, the defendant is subject to examination, cross-examination, and impeachment. *People v. Ladas* (1957), 12 Ill. 2d 290, 294, 146 N.E.2d 57, 59.

■■ In a related case, *People v. Wilbert* (1973), 15 Ill. App. 3d 974, 985, 305 N.E.2d 173, 180, the court permitted the prosecution to call in rebuttal an officer of the gang intelligence unit for the purpose of testifying that the defendant was a member of a particular street gang. This evidence was allowed after the defense had questioned occurrence witnesses about gang affiliations. The *Wilbert* court found defendant could not later claim that admission of this evidence was prejudicial. So it is in this case. Defendant opened the door by raising the issue of gang affiliation. Where the evidence is relevant and otherwise admissible, it is not to be excluded because the evidence may have a tendency to prejudice the accused. *People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840, 855.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

ROMITI, P. J., and LINN, J., concur.